Samantha M. Swanson, SBN 286954
**ADAMS FERRONE & FERRONE APC**
4333 Park Terrace Drive, Suite 200
Westlake Village, CA 91361
Telephone: (805) 373-5900
Facsimile: (818) 874-1382

Attorney for Plaintiff,
STEVE HOBB

UNITES STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE HOBB,<br><br>                    Plaintiff,<br>vs.<br><br>CITY OF BANNING, a public agency and/or municipal corporation; BANNING POLICE DEPARTMENT, a public agency and/or municipal corporation; ALEX DIAZ, individually and as Police Chief; DON PETERSON, individually; and DOES 1 THROUGH 10,<br><br>                    Defendants. | Case No.: 5:16-cv-1352<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF INDIVIDUAL CIVIL RIGHTS AND LIBERTIES**<br><br>**DEMAND FOR JURY TRIAL** |

**I.**

**PREFATORY**

1. This is an action for damages and injunctive relief for personal Injury suffered by the Plaintiff as a result of wrongful retaliation for the lawful exercise of individual civil rights and liberties of free expression and participation in labor, union, and political activities and due to engaging in protected activities.

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## II.
## JURISDICTION AND VENUE

2. Plaintiff's action is authorized by 42 U.S.C. § 1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. § 1343(4), providing for the protection of civil rights. Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367. This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is proper in the Central District of California in that the wrongs alleged herein occurred within the City of Banning, within the Central District.

## III.
## PARTIES

1. Plaintiff Steve Hobb (Hobb) was, and at all relevant times unless otherwise mentioned herein was, employed by Defendant City of Banning and the Banning Police Department in the capacity of Police Officer. As such he is entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights Act (POBOR). At all times relevant to the allegations contained herein, Plaintiff has been a resident of Riverside County. Plaintiff's home address is confidential.

2. Defendant City of Banning (City) is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Banning. The Banning Police Department (Department) is an operating department and a public agency of the City of Banning. At all times relevant herein for all purposes connected with the management of employment

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

relations matters within the Department, City delegated its final policy-making authority to Defendants. City adopted and ratified each of his decisions as alleged herein as its own policies, customs, practices or decisions, as if the same had been promulgated directly by City.

3. Defendant Alex Diaz (Diaz) was at all times relevant, as he is now, the Police Chief for the City of Banning and the Banning Police Department. In doing the things alleged herein, Diaz acted under color of state law, within the course and scope of his employment, and as an official policy-maker for the City and/or the Department. As a Department Head and the highest ranking sworn law enforcement official, Diaz along with and in conjunction with other Defendants is vested with policy-making authority over actions such as the ones at issue in this complaint.

4. Defendant Don Peterson (Peterson) was at all times relevant, as he is now, a member of City Council for the City of Banning. In doing the things alleged herein, Peterson was not acting in his role as City Council Member but was instead acting in his own personal capacity.

5. Pursuant to Kentucky v. Graham, 473 U.S. 159, 165 (1985), Diaz is sued personally (and individually) and in their official capacity. To establish personal liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. To establish an official-capacity action, where a governmental entity is liable under §1983, it is enough to show that the entity itself is a "moving force" behind the deprivation.

6. More specifically, the adverse actions taken against Hobb as fully explained below, were taken by Diaz. The allegations made here are based on information and belief, based on the few documents that have been reviewed as well as a deep understanding and working knowledge of how the City operates. It is likely that when additional information is made available to Plaintiff, he will be in a better position to provide further allegations supporting his claims.

7. Diaz 1) initially suspended Hobb; 2) at a Skelly hearing, imposed a termination; and 3) thereafter terminated Hobb.

8. Under current City policy and practice, the Chief of Police is delegated the final policy making authority with regard to imposing discipline. No other City employee or official, or even a City Council member, can implement disciplinary action against an officer or are involved in any disciplinary action in any way. The City's stated policy is that "the ultimate responsibility" for discipline rests with the Chief of Police. The policy states that the Chief of Police shall be considered "the ultimate authority" on behalf of the City with respect to administering discipline. Policy and practice within the City are that Diaz maintains "the ultimate authority" with respect to the functioning of his Department, as he is the highest sworn peace officer and presumably the only individual trained and legally competent to oversee a law enforcement organization. Diaz has the "ultimate authority" over the functioning, as well as the discipline and performance of the officers under his command. The policy and practice is that "once the Chief of Police has issued a written decision, the discipline shall become effective." Here, Diaz issued the written decisions implementing the aforementioned adverse actions, and they were made effective by the City pursuant to its long-standing stated policy. The City's policy expressly provides Diaz with that final authority, such that his actions are attributable to the City, who created the policy.

9. To that end, when exercising his authority, Diaz acted pursuant to these expressly adopted official policies as well as longstanding practices or customs of the City that grant and delegate him as "the ultimate authority" with respect to implementing discipline against an officer. See Ninth Circuit Manual of Model Civil Jury Instructions, 9.4. In addition, Diaz possessed final policymaking authority from the City with respect to discipline and performance of officers, as when carrying out his actions, acted as a final policymaker for the City. See Ninth

4

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Circuit Manual of Model Civil Jury Instructions, 9.5.  See also Lytle v. Carl, 382
2  F.3d 978, 983 (9th Cir.2004) ("For a person to be a final policymaker, he or she
3  must be in a position of authority such that a final decision by that person may
4  appropriately be attributed to the [City].").  Pursuant to policy and practice, his
5  actions are properly attributable to the City.

        10.    Defendant DOES 1 through 10 are not known or identified at this time.  On information and belief, Hobb alleges that each DOE is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known, Hobb will seek relief to amend this complaint to show their true identities in place of their fictitious names as DOES 1 through 10.

        11.    Defendants, and each of them, were the agent, employees and servants of every other Defendant.  Defendants acted in the course and scope of said agency, service and employment at all relevant times.

## IV.
## FACTS COMMON TO ALL COUNTS

        12.    Plaintiff is a police officer who blew the whistle on rampant internal corruption occurring within the City of Banning and the Banning Police Department.  Hobb exposed cronyism, the Department's cover-up of a Civil Rights Violation, several quid pro quo arrangements.  The Department terminated his employment in an effort to hinder Hobb from bringing these and multiple other wrongdoings to light, and as he was on verge of exposing an egregious cover up by the Chief regarding a civil rights violation committed on a citizen.

        13.    Hobb was a Board Member for the Banning Police Officers Association ("Association" or "POA").  As part of his duties in the role as POA Board Member, Hobb represented other officers' interests, claims and grievances, as well as the Association's as a whole, during disciplinary or grievance

proceedings, or during many written and verbal conversations with Defendants and the City's representatives.

14. As a Board Member, Hobb has consistently engaged in numerous protected activities, which include but are not limited to: speaking out at meetings about matters of public concern as well as matters bearing on the efficiency and sustainability of the City, the workforce, the Department; filing, assisting with and propounding legally protected actions, including but not limited to grievances, unfair labor charges, and the like. At all times, Hobb's position on the Association Board rendered his activities on their behalf protected under state and federal law, including but not limited to the California and United States Constitution.

15. Prior to Diaz being promoted to Chief, on or about December 18, 2014 Hobb sent an e-mail to City Council Members informing the council that the POA had not endorsed appointing Diaz as the next chief. The email expressed the POA's desire to be included in recruiting the next chief and the desire that the new chief meet the perquisites for the position of chief. Diaz later on or about May 23, 2015 informed Hobb that Diaz knew Hobb did not support the promotion. Then threatened that Hobb and another officer that they should, "do whatever it took to protect themselves and their family."

16. On or about September 11, 2013, Hobb was approached by David Ellis, the planning commissioner for the City of Banning. Ellis demanded that the fire trucks that were being used to fly American flags in honor of the fallen firefighters that perished on September 11, 2001 be cited as Don Peterson had considered them to be in violation of California Vehicle Section 400, which they were not. Hobb refused to violate the law by issuing fraudulent traffic citations at the insistence of a council member. As a result of this action, Peterson began his unrelenting campaign of retaliation and harassment against Hobb.

17. In May 2014, Hobb was demoted from sergeant to corporeal in retaliation. During a meeting with Diaz in May 2014, Diaz stated that the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

demotion was politically motivated and in retaliation. Peterson and HR Personnel Rita Chaparrosa wanted Hobb to be terminated as a result of Hobb following the orders of Chief Purvis and writing a police report regarding the incident on or about September 11, 2013.

18. Hobb blew the whistle on a quid pro quo deal between Diaz, City Council, and Interim City Manager James Smith. Diaz admitted to Hobb that he promoted an unqualified officer, to the position of sergeant as a result of an arrangement with Smith. Smith promised Diaz that if the officer was promoted, then The Department would receive new cars, personnel and money for the new radio system. In exchange for Fisher's promotion, Smith was told that he would procure the full time City Manager position.

19. Further, Hobb was impeded by both The Banning Police Department and the City of Banning from exposing the unjustified promotions within the department. The Department promoted an officer to the position after the officer failed to qualify to take the Chief's Oral Exam. Diaz informed Hobb that the reason for the promotion was politically motivated due to pressure being placed on Diaz by The City Council Members.

20. On or about August 21, 2015 Diaz admitted to Hobb that Diaz purposefully passed over Hobb for a promotion. When Hobb inquired why he was not promoted, Diaz informed Hobb that Diaz disliked Hobb's "message" within The Department. Hobb's message included each of his protected actions.

21. Following a series of continued harassment, retaliation and attempted intimidation by Peterson, Hobb filed a complaint with HR Personnel Chapparosa on or about November 9, 2014. Diaz informed Hobb on multiple occasions that Peterson wanted Hobb fired. Peterson also attempted to engage in a quid pro quo arrangement with a former City employee. Peterson wanted the former employee to write a defaming letter regarding Hobb's character in exchange for getting the former employee an interview with another law enforcement agency. After almost

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

a year went by without hearing about the complaint, Hobb contacted Chapparosa who informed him on or about September 14, 2015 that contrary to the required policy, she made the decision that The City would not open an investigation against Peterson.

22.  Further, Hobb has blown the whistle on Diaz and his threats and illegal activities on several occasions.  Most recently, Hobb became aware that an officer violated the Civil Rights of a citizen.  Later, Hobb discovered that Diaz did not open an internal affairs investigation but was covering the incident up.  On or about September 13, 2015 Hobb sent an email to POA members requesting a meeting to discuss the unethical and illegal actions committed by Diaz.  The following day, Diaz placed him on administrative leave, in an effort to prohibit Hobb from attending the meeting and bringing to light Diaz's actions.  Diaz interfered with the Association and the exercise of its function by making illegal statements that Hobb was not allowed to attend the meeting that he called.  Diaz was that Hobb's intention for calling the meeting was to expose Diaz.  This was a blatant attempt by Diaz to cover-up his corruption.

23.  Hobb has brought up and disclosed each of these law violations to the Riverside County District Attorney's Office.  Hobb has voiced his concern and filed documents challenging the illegal actions of Defendants, including the quid pro arrangement and Diaz's sweeping under the rug the sergeant who violated the Civil Rights of a citizen.  On or about November 30, 2015 The District Attorney's Office notified Hobb that they will investigate the quid pro arrangement.

## V.
## CAUSE OF ACTION
### *42 U.S.C. § 1983*
*Against All Defendants*

24.  Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

25. Diaz has deliberately harassed, discriminated and retaliated against Hobb by administering frivolous internal investigations, written reprimands, counseling memorandums, intimidation, bullying, harassment, demotions, and ultimately firing Hobb on or about March 4, 2016.

26. In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression and to petition the government. Specifically, Defendants have taken the aforementioned action against Plaintiff in direct retaliation for, and in response to his various protected activities, some of which have been described herein. There are of course additional activities which have not been included in this claim. The acts and omissions of Defendants, and each of them, were done by Defendants under color of state law in their capacity as a municipality chartered under state law, and as policy making authorities to which Defendant City delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed. The acts and omissions described above were taken by the City's official policy maker as a member charged with such responsibility. It was or should have been plainly obvious to any reasonable policy making official of the City that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of his rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof. Punitive damages are sought against the individual defendant, according to proof.

27. Plaintiff has exhausted all available and appropriate administrative remedies to compel the relief sought herein, including the filing of a Claim for

1  Damages which has been rejected by Defendants.  Government Code Section 3304
2  3300 et seq. provides that where it finds that an employer has violated any of the
3  provisions of the Public Safety Officers Procedural Bill of Rights Act (POBOR), a
4  court may render appropriate injunctive or other extraordinary relief to remedy the
5  violation and to prevent future violations of a like or similar nature including, but
6  not limited to the granting of a temporary restraining order, preliminary or
7  permanent injunction prohibiting the public safety department from taking any
8  punitive action against the public safety officer.  Defendants maliciously violated
9  POBOR with the intent to injure Hobb all in retaliation for his lawful exercise of
10 his statutory and constitutional rights.  Defendants are therefore liable for a civil
11 penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, for
12 reasonable attorney's fees as may be determined by the court, as well as Plaintiff's
13 actual damages.
14      28. It was or should have been plainly obvious to any reasonable policy
15 making official of City that the acts and omissions of Defendants as alleged herein,
16 taking singly or in conjunction, directly violated and continued to violate
17 Plaintiff's clearly established constitutional and statutory rights.  In doing the
18 things alleged herein, Defendants acted with malicious intent to violate Plaintiff's
19 rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights
20 and to the injurious consequences likely to result from a violation of said rights.
21 General and special damages are sought according to proof.  Punitive damages are
22 sought against the individual defendants, according to proof.
23 ///
24 ///
25 ///
26 ///
27 ///
28

## VI.

# PRAYER

WHEREFORE, Plaintiff prays:

1. For general, special, compensatory (including lost wages and benefits), statutory, exemplary and punitive damages according to proof;
2. For injunctive relief as described above;
3. For costs of suit;
4. For attorneys fees as permitted by law; and
5. For any and all other appropriate relief the Court deems necessary.

Dated: June 23, 2016      Respectfully Submitted,

ADAMS FERRONE & FERRONE, APC

/s/
Samantha M. Swanson
Attorneys for Plaintiff,
STEVE HOBB

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial under F.R. Civ. P., Rule 38 and C.D. Cal. Rule 3.4.10.1.

Dated: June 23, 2016      Respectfully Submitted,

ADAMS FERRONE & FERRONE, APC

/s/
Samantha M. Swanson
Attorneys for Plaintiff,
STEVE HOBB

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF