Geoffrey S. Sheldon, Bar No. 185560
gsheldon@lcwlegal.com
Joung H. Yim, Bar No. 216136
jyim@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045
Telephone:   310.981.2000
Facsimile:   310.337.0837

Attorneys for Defendant ALEX DIAZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| STEVE HOBB,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF BANNING, a public and/or municipal corporation; BANNING POLICE DEPARTMENT, a public agency and/or municipal corporation; ALEX DIAZ, individually and as Police Chief; DON PETERSON, individually; and DOES 1 THROUGH 10,<br><br>                    Defendants. | Case No.:  5:16-cv-01352 AB (JCx)<br><br>Complaint Filed: June 23, 2016<br>FAC Filed: August 8, 2016<br><br>**DEFENDANT ALEX DIAZ'S APPENDIX OF EVIDENCE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES (VOLUME 1 OF 4 – EXHIBITS 1 THROUGH 7)**<br><br>Trial Date:          January 16, 2018<br>Final Pretrial Conf.:  December 18, 2017<br>Discovery Cut-Off:  August 18, 2017<br><br>Date:          September 22, 2017<br>Time:          10:00 a.m.<br>Courtroom:  7B |

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1

DEFENDANT ALEX DIAZ'S APPENDIX OF EVIDENCE

1   TO THE COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that Defendant Alex Diaz ("Defendant")

3   respectfully submits his Appendix of Evidence in support of Defendant's Motion

4   for Summary Judgment or, in the Alternative, Summary Adjudication against

5   Plaintiff Steve Hobb ("Plaintiff"). Diaz respectfully requests that the Court consider

6   the following evidence referenced in its Separate Statement of Uncontroverted

7   Facts and Conclusions of Law in support of its Motion, filed concurrently herewith.

## DECLARATIONS

9   Exhibit A:   **DECLARATION OF ALEX DIAZ**

10  Exhibit B:   **DECLARATION OF RITA CHAPPAROSA**

11  Exhibit C:   **DECLARATION OF JOUNG H. YIM**

## EXHIBITS

14  Exhibit 1:   First Amended Complaint for Damages and Injunctive Relief for

15              Violation of Individual Civil Rights and Liberties

16  Exhibit 2:   Excerpted pages of the deposition of Steve Hobb taken on

17              January 6, 2017 and February 3, 2017

18  Exhibit 3:   Stipulated Imposition of Disciplinary Action – Demotion dated

19              March 23, 2011

20  Exhibit 4:   Employee Status Change Proposal Effective 5/13/2013

21  Exhibit 5:   Memo from Acting Chief Diaz to Sgt. Steve Hobb Re

22              Probationary Evaluation – Failure of Probation dated

23              05/09/2014

24  Exhibit 6:   Memo from Interim Chief Diaz to Steve Hobb Re Stipulated

25              Imposition of Disciplinary Action – Reduction in Pay &

26              Counseling dated 9/9/2014

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

DEFENDANT ALEX DIAZ'S APPENDIX OF EVIDENCE

8259397.1 BA060-035

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1  Exhibit 7:   Letter from Andy Clack of TCTI to City of Banning dated

2              4/27/2015

3  Exhibit 8:   IA #15-04

4  Exhibit 9:   IA #15-06 and IA #15-09

5  Exhibit 10:  IA #15-08

6  Exhibit 11:  Email from Steve Hobb Re Emergency POA Meeting dated

7              9/14/2015

8  Exhibit 12:  Notice of Administrative Leave dated 9/15/2015

9  Exhibit 13:  Authorization to Propose Termination of Steven Hobb, Police

10              Corporal dated 2/4/2016

11  Exhibit 14:  Notice of Proposed Disciplinary Action – Termination dated

12              2/4/2016

13  Exhibit 15:  Notice of Imposition of Disciplinary Action – Termination dated

14              3/4/2016

15  Exhibit 16:  Letter from Robert Baumann to City of Banning Re Appeal of

16              Steven Hobb of Termination Notice dated March 4, 2016

17  Exhibit 17:  Email from Robert Baumann to Colin Tanner Re Steven Hobb

18              Disciplinary Appeal dated 3/18/2016

19

20  Dated:  August 25, 2017                    LIEBERT CASSIDY WHITMORE

21

22

23              By:   */s/ Joung H. Yim*

24                    Geoffrey S. Sheldon
                      Joung H. Yim
                      Attorneys for Defendant ALEX DIAZ

25

26

27

28

3

8259397.1 BA060-035

# EXHIBIT A

1  Geoffrey S. Sheldon, Bar No. 185560
   gsheldon@lcwlegal.com
2  Joung H. Yim, Bar No. 216136
   jyim@lcwlegal.com
3  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
4  6033 West Century Boulevard, 5th Floor
   Los Angeles, California 90045
5  Telephone:  310.981.2000
   Facsimile:  310.337.0837
6
   Attorneys for Defendant ALEX DIAZ
7

8
                    UNITED STATES DISTRICT COURT
9
         CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
10

11  STEVE HOBB,                          Case No.: 5:16-cv-01352 AB (JCx)

12              Plaintiff,               Complaint Filed: June 23, 2016
                                         FAC Filed: August 8, 2016
13         v.
                                         **DECLARATION OF ALEX DIAZ IN**
14  CITY OF BANNING, a public            **SUPPORT OF DEFENDANT'S**
    and/or municipal corporation;        **MOTION FOR SUMMARY**
15  BANNING POLICE                       **JUDGMENT**
    DEPARTMENT, a public agency
16  and/or municipal corporation; ALEX   Date:       September 22, 2017
    DIAZ, individually and as Police     Time:       10:00 a.m.
17  Chief; DON PETERSON,                 Courtroom: 7B
    individually; and DOES 1
18  THROUGH 10,
                                         Trial Date:   January 16, 2018
19              Defendants.              Final Pretrial Conf.: December 18, 2017
                                         Discovery Cut-Off: August 18, 2017
20

21

22

23

24

25

26

27

28
                                    1
   DECLARATION OF ALEJANDRO DIAZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
                                                              JUDGMENT

   8271503.1 BA060-035

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

## DECLARATION OF ALEX DIAZ

I, Alex Diaz, do declare as follows:

1.      I am the Chief of Police for the City of Banning and I have personal knowledge of all facts set forth herein.  If called upon to testify to same, I could and would so testify.

2.      I have served as Chief of Police for the Banning Police Department since September 2014. I started at the Department in December 2005 as a Police Officer. I became Sergeant in November 2007 and served in that capacity until I became Interim Chief of Police in 2014.

3.      As Chief of Police, my duties include overseeing and managing over 28 sworn police officers and other non-sworn employees.  The Department is charged by law with ensuring the safety of a diverse community of 31,026 people.  As part of my duties, I oversee hiring and promotion of employees.  Specifically, I am responsible for interviewing and selecting sworn public safety employees for promotion.  I am also responsible for recommending to the City Manager the dismissal of any member of the Department as it becomes necessary.

4.      Plaintiff Steve Hobb was formerly employed by the City as a Police Officer until his termination on March 4, 2016. Hobb was hired as a lateral from Beaumont Police Department in April 2005.

5.      I prepared a memo dated May 9, 2014 notifying Hobb that he had failed his probationary evaluation and would be returned to his prior Corporal position effective May 12, 2014. A true and correct copy of the May 9, 2014 memo is incorporated herein and attached as Exhibit 5 to the Appendix.

6.      In my May 9, 2014 memo to Hobb, I noted the following reasons for not passing Hobb during his probationary period: "The errors in judgment and your behavior in response to them along with emotional stability and maturity issues causes me to believe that you [Hobb] are simply not ready to assume the role of

DECLARATION OF ALEJANDRO DIAZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

8271503.1 BA060-035

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Sergeant at this time." Moreover, Hobb was "strongly urged, however, to consider [his] overall judgment, attitude, emotional stability, maturity, response to confrontational issues, and willingness to learn from negative experiences and/or mistakes." A true and correct copy of the May 9, 2014 memo is incorporated herein and attached as Exhibit 5 to the Appendix.

7. I prepared a memo dated September 9, 2014 to Hobb, wherein Hobb stipulated to the imposition of discipline – potential reduction in pay – based on sustained findings in three separate internal affairs investigations: Nos. 13-04, 13-22 and 14-01. A true and correct copy of the Stipulated Imposition of Disciplinary Action dated September 9, 2014 is incorporated herein and attached as Exhibit 6 to the Appendix.

8. Hobb signed the September 9, 2014 stipulated discipline on September 10, 2014, waiving his right to a pre-disciplinary response or a post discipline appeal.

9. The three investigations (IA Nos. 13-04, 13-22 and 14-01) resulted in sustained findings for discourteous and disrespectful treatment of citizens. Hobb was found to have violated the following Department Polices: (1) Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department; and (2) Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members. A true and correct copy of the Stipulated Imposition of Disciplinary Action dated September 9, 2014 is incorporated herein and attached as Exhibit 6 to the Appendix.

10. Hobb agreed to a reduction in pay for 16 hours, which would be set aside if he completed an Anger Management course. A true and correct copy of the Stipulated Imposition of Disciplinary Action dated September 9, 2014 is incorporated herein and attached as Exhibit 6 to the Appendix.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

3

11.     Internal Affairs Investigation No. 15-04 was initiated against Hobb when I received an email complaint on August 3, 2015 from Nicole Yadon, Sexual Assault Response Team (SART) Program Coordinator. A true and correct copy of the IA No. 15-04 Investigation report with all attachments is incorporated herein and attached as Exhibit 8 to the Appendix.

12.     Nurse Yadon and several others from SART were scheduled to provide annual training to Banning officers on July 30, 2015. Yadon complained that Hobb treated her and her team rudely and unprofessionally during the visit. A true and correct copy of the IA No. 15-04 Investigation report with all attachments is incorporated herein and attached as Exhibit 8 to the Appendix.

13.     Once the independent investigation was completed in IA No. 15-04, I reviewed the investigation report and all attachments in its entirety – including all witness interviews – and agreed with its findings that Hobb was found to have violated the following Department Polices: (1) Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department; and (2) Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members. A true and correct copy of the IA No. 15-04 Investigation report with all attachments is incorporated herein and attached as Exhibit 8 to the Appendix.

14.     Internal Affairs Investigations Nos. 15-06 and 15-09 were initiated as a result of cross-complaints filed by Hobb and Sergeant Robert Fisher. The complaints concerned an interaction between Hobb and Fisher on August 20, 2015, which included a disagreement between the two regarding the handling of an incident. Hobb's complaint was sent to Lieutenant Holder on August 21, 2015 and Fisher's complaint was submitted to me on August 24, 2015. A true and correct copy of IA

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

DECLARATION OF ALEJANDRO DIAZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

8271503.1 BA060-035

1   Nos. 15-06 and 15-09 Investigation report with all attachments is incorporated
2   herein and attached as Exhibit 9 to the Appendix.
3   15.     Once the independent investigation was completed in IA No. 15-09, I
4   reviewed the investigation report and all attachments in its entirety – including all
5   witness interviews – and agreed with its findings that Hobb was found to have
6   violated Department Policy sections 200.3.1 and 200.3.2: the Department's chain of
7   command when he directly contacted me to resolve a dispute with Sergeant Fisher
8   on August 20, 2015. A true and correct copy of IA Nos. 15-06 and 15-09
9   Investigation report with all attachments is incorporated herein and attached as
10   Exhibit 9 to the Appendix.
11   16.     The allegations against Sgt. Fisher in IA No. 15-06 and two other allegations
12   against Hobb in IA No. 15-09 were not sustained or unfounded. A true and correct
13   copy of IA Nos. 15-06 and 15-09 Investigation report with all attachments is
14   incorporated herein and attached as Exhibit 9 to the Appendix.
15   17.     Internal Affairs Investigation No. 15-08 was initiated against Hobb when
16   Sergeant Vincent Avila filed a complaint against Hobb with Human Resources on
17   September 15, 2015.  Sergeant Avila told me about the complaint he submitted to
18   Human Resources on the same date. A true and correct copy of the IA No. 15-08
19   Investigation report with all attachments is incorporated herein and attached as
20   Exhibit 10 to the Appendix.
21   18.     On September 15, 2015, after learning about Sergeant Avila's complaint
22   against Hobb and based on the two prior allegations of misconduct all occurring
23   within a month and a half, I placed Hobb on paid administrative leave effective
24   September 15, 2015. A true and correct copy of the September 15, 2015 paid
25   administrative leave notice to Hobb is is incorporated herein and attached as
26   Exhibit 12 to the Appendix.
27   19.     Once the independent investigation was completed in IA No. 15-08, I
28

LIEBERT  CASSIDY  WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

5

1  reviewed the investigation report and all attachments in its entirety – including all

2  witness interviews – and agreed with its findings that Hobb was found to have

3  violated the following Department Polices: (1) Unauthorized, intentional release of

4  designated confidential information, materials, data, forms or reports; and (2)

5  Unauthorized access to any database, record, file or report for any reason other than

6  a specific law enforcement purpose. A true and correct copy of the IA No. 15-08

7  Investigation report with all attachments is incorporated herein and attached as

8  Exhibit 10 to the Appendix.

9  20.     Once all three (IA Nos. 15-04, 15-08 and 15-09) internal affairs

10  investigations were completed, I reviewed the investigation reports and all of its

11  attachments and I made the decision to recommend termination for Hobb.

12  21.     On February 4, 2016, I received authorization from Deputy City Manager,

13  Rochelle Clayton to serve a Notice of Proposed Disciplinary Action for

14  Termination, to Hobb. A true and correct copy of the February 4, 2016

15  authorization is incorporated herein and attached as Exhibit 13 to the Appendix.

16  22.     On or about February 5, 2016, Hobb was issued a Notice of Proposed

17  Disciplinary Action – Termination. A true and correct copy of the Notice of

18  Proposed Disciplinary Action - Termination is incorporated herein and attached as

19  Exhibit 14 to the Appendix.

20  23.     The Notice of Proposed Termination sets forth the factual basis, the specific

21  rule violations, and identifies all materials upon which the proposed termination is

22  based. A true and correct copy of the Notice of Proposed Disciplinary Action -

23  Termination is incorporated herein and attached as Exhibit 14 to the Appendix.

24  24.     I also considered Hobb's personnel file and specifically, the Stipulated

25  Imposition of Disciplinary Action dated March 23, 2011 and September 9, 2014 in

26  making the decision to propose termination of Hobb's employment. A true and

27  correct copy of the Notice of Proposed Disciplinary Action - Termination is

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

6

DECLARATION OF ALEJANDRO DIAZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

8271503.1 BA060-035

1    incorporated herein and attached as Exhibit 14 to the Appendix.

2    25.    1 found that Hobb displayed a continuing pattern of behavior unfit for a

3    member of the Banning Police Department who are entrusted with providing a safe

4    environment to all citizens, visitors and colleagues. The repeated and documented

5    acts from 2011 through the end of 2015 demonstrating a pattern for uncontrolled

6    anger, discourteous and unprofessional treatment of citizens and superior officers

7    could no longer be tolerated or accepted. I found that Hobb engaged in a series of

8    unbecoming actions, which breached the public trust, undermined fellow employees

9    and harmed the Department as a whole. A true and correct copy of the Notice of

10   Proposed Disciplinary Action - Termination is incorporated herein and attached as

11   Exhibit 14 to the Appendix.

12   26.    On February 29, 2016, a pre-disciplinary (*Skelly*) meeting was held between

13   Hobb, his legal counsel, the Deputy City Attorney and me.

14   27.    On March 4, 2016, Hobb received notice of his termination of employment

15   from me. The termination notice incorporated the previously served Notice of

16   Proposed Disciplinary Action – Termination dated February 4, 2016, Internal

17   Affairs Investigation Nos. 15-04, 15-08 and 15-09, and the corresponding

18   Administrative Investigation reports.  A true and correct copy of the notice of

19   termination is incorporated herein and attached as Exhibit 15 to the Appendix.

20   28.    The March 4, 2016 termination notice afforded Hobb administrative appeal

21   rights to have the matter submitted for arbitration. A true and correct copy of the

22   notice of termination is incorporated herein and attached as Exhibit 15 to the

23   Appendix.

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

7

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of August, 2017, in Banning, California.

_____

ALEX DIAZ

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

8

011

DECLARATION OF ALEJANDRO DIAZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

8271503.1 BA060-035

# EXHIBIT B

1  Geoffrey S. Sheldon, Bar No. 185560
   gsheldon@lcwlegal.com
2  Joung H. Yim, Bar No. 216136
   jyim@lcwlegal.com
3  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
4  6033 West Century Boulevard, 5th Floor
   Los Angeles, California 90045
5  Telephone:  310.981.2000
   Facsimile:   310.337.0837
6
   Attorneys for Defendant ALEX DIAZ
7

8
                 UNITED STATES DISTRICT COURT
9
       CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
10

11  STEVE HOBB,                          Case No.: 5:16-cv-01352 AB (JCx)

12              Plaintiff,               Complaint Filed: June 23, 2016
                                         FAC Filed: August 8, 2016
13       v.
                                         **DECLARATION OF RITA**
14  CITY OF BANNING, a public            **CHAPPAROSA IN SUPPORT OF**
    and/or municipal corporation;        **DEFENDANT'S MOTION FOR**
15  BANNING POLICE                       **SUMMARY JUDGMENT**
    DEPARTMENT, a public agency
16  and/or municipal corporation; ALEX   Date:       September 22, 2017
    DIAZ, individually and as Police     Time:       10:00 a.m.
17  Chief; DON PETERSON,                  Courtroom:  7B
    individually; and DOES 1
18  THROUGH 10,
                                         Trial Date:  January 16, 2018
19              Defendants.              Final Pretrial Conf.: December 18, 2017
                                         Discovery Cut-Off: August 18, 2017
20

21

22

23

24

25

26

27

28
                                    1

8271510.1 BA060-035

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

# DECLARATION OF RITA CHAPPAROSA

I, Rita Chapparosa, do declare as follows:

1.      I am the Deputy Human Resources Director for the City of Banning and I have personal knowledge of all facts set forth herein. If called upon to testify to same, I could and would so testify.

2.      I have served as the Deputy Human Resources Director for approximately seven years at the City of Banning. I have held other positions within the Human Resources Department at the City and have been employed at the City for 37 years.

3.      Plaintiff Steve Hobb was formerly employed by the City as a Police Officer until his termination on March 4, 2016.

4.      On or about May 13, 2013 Hobb was promoted to Sergeant (from Corporal) with a one-year probationary period. A true and correct copy of the Employee Status Change Proposal is incorporated herein and attached as Exhibit 4 to the Appendix.

5.      On or about May 2015, I received a letter from Andy Clack of The Counseling Team International verifying that Hobb attended six anger management therapy sessions in January and April of 2015. A true and correct copy of the letter is incorporated herein and attached as Exhibit 7 to the Appendix.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of August, 2017, in Los Angeles, California.

RITA CHAPPAROSA

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

2

013

# EXHIBIT C

1   Geoffrey S. Sheldon, Bar No. 185560
    gsheldon@lcwlegal.com
2   Joung H. Yim, Bar No. 216136
    jyim@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
4   6033 West Century Boulevard, 5th Floor
    Los Angeles, California 90045
5   Telephone:  310.981.2000
    Facsimile:   310.337.0837
6
7   Attorneys for Defendant ALEX DIAZ

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  STEVE HOBB,                          Case No.:  5:16-cv-01352 AB (JCx)

12                    Plaintiff,          Complaint Filed: June 23, 2016
                                          FAC Filed: August 8, 2016
13             v.
                                          **DECLARATION OF JOUNG H. YIM**
14  CITY OF BANNING, a public            **IN SUPPORT OF DEFENDANT**
    and/or municipal corporation;        **ALEX DIAZ'S MOTION FOR**
15  BANNING POLICE                       **SUMMARY JUDGMENT**
    DEPARTMENT, a public agency
16  and/or municipal corporation; ALEX    Trial Date:            January 16, 2018
    DIAZ, individually and as Police      Final Pretrial Conf.:  December 18, 2017
17  Chief; DON PETERSON,                  Discovery Cut-Off:   August 18, 2017
    individually; and DOES 1
18  THROUGH 10,                           Date:          September 22, 2017
                                          Time:        10:00 a.m.
19                    Defendants.         Courtroom:  7B

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

                                                    1                              **014**

## **DECLARATION OF JOUNG H. YIM**

I, Joung H. Yim, declare as follows:

1.      I am an attorney at law duly licensed to practice in all courts of the State of California, and in this Court.  I am an associate at Liebert Cassidy Whitmore ("LCW"), attorneys of record for Defendant Alex Diaz. I make this declaration in support of Defendant Diaz's Motion for Summary Judgment, based on my own personal knowledge. If called upon to do so, I could and would competently testify

2.      Attached as Exhibit 1 to Defendant's Appendix of Evidentiary Support ("Appendix") is a true and correct copy of Plaintiff's First Amended Complaint.

3.      On or about January 6, 2017 and on or about February 3, 2017, Geoff Sheldon, an attorney from my firm deposed Plaintiff in this action.  Attached as Exhibit 2 to the Appendix are relevant excerpts from Plaintiff's deposition.

4.      Included as Exhibit 3 to the Appendix is a true and correct copy of the March 23, 2011 Stipulated Imposition of Discipline which Plaintiff authenticated during his deposition.

5.      Included as Exhibit 5 to the Appendix is a true and correct copy of the May 9, 2014 memo from Chief Diaz to Plaintiff notifying Plaintiff that he had failed his Sergeant probationary period which Plaintiff authenticated during his deposition.

6.      Included as Exhibit 6 to the Appendix is a true and correct copy of the September 9, 2014 Stipulated Imposition of Discipline which Plaintiff authenticated during his deposition.

7.      Included as Exhibit 11 to the Appendix is a true and correct copy of the September 14, 2015 email from Plaintiff to members of the police department which Plaintiff authenticated during his deposition.

8.      Included as Exhibit 12 to the Appendix is a true and correct copy of the September 15, 2015 notice placing Plaintiff on paid administrative leave which

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

2

**015**

Plaintiff authenticated during his deposition.

9.     Included as Exhibit 14 to the Appendix is a true and correct copy of the February 2016 Notice of Proposed Disciplinary Action – Termination which Plaintiff authenticated during his deposition.

10.     Included as Exhibit 15 to the Appendix is a true and correct copy of the March 2016 Notice of Imposition of Discipline – Termination which Plaintiff authenticated during his deposition.

11.     On June 30, 2017, pursuant to Central District Local Rule 7-3, a conference was held with Plaintiff's counsel, Samantha Swanson regarding Defendant's contemplated Motion for Summary Judgment

I declare under the penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 25th day of August, 2017, at Los Angeles California.



                              */s/ Joung H. Yim*
                              Joung H. Yim

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

`

# EXHIBIT 1

1   Samantha M. Swanson, SBN 286954
2   sswanson@adamsferrone.com
3   **ADAMS FERRONE & FERRONE APC**
    4333 Park Terrace Drive, Suite 200
4   Westlake Village, CA 91361
    Telephone: (805) 373-5900
5   Facsimile: (818) 874-1382
6
7   Attorney for Plaintiff,
    STEVE HOBB
8
9             UNITES STATES DISTRICT COURT
10           CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12   STEVE HOBB, | Case No.: 5:16-cv-01352 AB (JCx) |
| 13 | |
| 14           Plaintiff, <br> vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF INDIVIDUAL CIVIL RIGHTS AND LIBERTIES** |
| 15   CITY OF BANNING, a public agency and/or municipal corporation; | |
| 16   BANNING POLICE DEPARTMENT, a public agency and/or municipal | **DEMAND FOR JURY TRIAL** |
| 17   corporation; ALEX DIAZ, individually and as Police Chief; DON PETERSON, | |
| 18   individually; and DOES 1 THROUGH 10, | |
| 19 | |
| 20           Defendants. | |
| 21 | |
| 22 | |

23
24                             **I.**
25                     **PREFATORY**
26       1.     This is an action for damages and injunctive relief for personal
27   Injury suffered by the Plaintiff as a result of wrongful retaliation for the lawful
28   exercise of individual civil rights and liberties of free expression and participation

I

1    in labor, union, and political activities and due to engaging in protected activities.

## II.

## JURISDICTION AND VENUE

2.    Plaintiff's action is authorized by 42 U.S.C. § 1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States.  Jurisdiction is conferred on this Court by 28 U.S.C.  § 1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. § 1343(4), providing for the protection of civil rights. Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.  This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§ 2201 and 2202.  Venue is proper in the Central District of California in that the wrongs alleged herein occurred within the City of Banning, within the Central District.

## III.

## PARTIES

1.    Plaintiff Steve Hobb (Hobb) was, and at all relevant times unless otherwise mentioned herein was, employed by Defendant City of Banning and the Banning Police Department in the capacity of Police Officer.  As such he is entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights Act (POBOR).  At all times relevant to the allegations contained herein, Plaintiff has been a resident of Riverside County.  Plaintiff's home address is confidential.

2.    Defendant City of Banning (City) is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Banning.  The Banning Police Department (Department) is an operating department and a public agency of the City of Banning.  At all times

2

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  relevant herein for all purposes connected with the management of employment

2  relations matters within the Department, City delegated its final policy-making

3  authority to Defendants.  City adopted and ratified each of his decisions as alleged

4  herein as its own policies, customs, practices or decisions, as if the same had been

5  promulgated directly by City.

6       3.    Defendant Alex Diaz (Diaz) was at all times relevant, as he is now,

7  the Police Chief for the City of Banning and the Banning Police Department.  In

8  doing the things alleged herein, Diaz acted under color of state law, within the

9  course and scope of his employment, and as an official policy-maker for the City

10  and/or the Department.  As a Department Head and the highest ranking sworn law

11  enforcement official, Diaz along with and in conjunction with other Defendants is

12  vested with policy-making authority over actions such as the ones at issue in this

13  complaint.

14       4.    Defendant Don Peterson (Peterson) was at all times relevant, as he is

15  now, a member of City Council for the City of Banning.  In doing the things

16  alleged herein, Peterson was not acting in his role as City Council Member but was

17  instead acting in his own personal capacity.

18       5.    Pursuant to Kentucky v. Graham, 473 U.S. 159, 165 (1985), Diaz is

19  sued personally (and individually) and in their official capacity. To establish

20  personal liability in a §1983 action, it is enough to show that the official, acting

21  under color of state law, caused the deprivation of a federal right.  To establish an

22  official-capacity action, where a governmental entity is liable under §1983, it is

23  enough to show that the entity itself is a "moving force" behind the deprivation.

24       6.    More specifically, the adverse actions taken against Hobb as fully

25  explained below, were taken by Diaz.  The allegations made here are based on

26  information and belief, based on the few documents that have been reviewed as

27  well as a deep understanding and working knowledge of how the City operates.  It

28  is likely that when additional information is made available to Plaintiff, he will be

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   in a better position to provide further allegations supporting his claims.

2       7.    Diaz 1) initially suspended Hobb; 2) at a Skelly hearing, imposed a

3   termination; and 3) thereafter terminated Hobb.

4       8.    Under current City policy and practice, the Chief of Police is

5   delegated the final policy making authority with regard to imposing discipline.  No

6   other City employee or official, or even a City Council member, can implement

7   disciplinary action against an officer or are involved in any disciplinary action in

8   any way.  The City's stated policy is that "the ultimate responsibility" for

9   discipline rests with the Chief of Police.  The policy states that the Chief of Police

10   shall be considered "the ultimate authority" on behalf of the City with respect to

11   administering discipline.  Policy and practice within the City are that Diaz

12   maintains "the ultimate authority" with respect to the functioning of his

13   Department, as he is the highest sworn peace officer and presumably the only

14   individual trained and legally competent to oversee a law enforcement

15   organization.  Diaz has the "ultimate authority" over the functioning, as well as the

16   discipline and performance of the officers under his command.  The policy and

17   practice is that "once the Chief of Police has issued a written decision, the

18   discipline shall become effective."  Here, Diaz issued the written decisions

19   implementing the aforementioned adverse actions, and they were made effective

20   by the City pursuant to its long-standing stated policy.  The City's policy expressly

21   provides Diaz with that final authority, such that his actions are attributable to the

22   City, who created the policy.

23       9.    To that end, when exercising his authority, Diaz acted pursuant to

24   these expressly adopted official policies as well as longstanding practices or

25   customs of the City that grant and delegate him as "the ultimate authority" with

26   respect to implementing discipline against an officer.  See Ninth Circuit Manual of

27   Model Civil Jury Instructions, 9.4.  In addition, Diaz possessed final policymaking

28   authority from the City with respect to discipline and performance of officers, as

4

1    when carrying out his actions, acted as a final policymaker for the City.  See Ninth

2    Circuit Manual of Model Civil Jury Instructions, 9.5.  See also Lytle v. Carl, 382

3    F.3d 978, 983 (9th Cir.2004) ("For a person to be a final policymaker, he or she

4    must be in a position of authority such that a final decision by that person may

5    appropriately be attributed to the [City].").  Pursuant to policy and practice, his

6    actions are properly attributable to the City.

7        10.    Defendant DOES 1 through 10 are not known or identified at this

8    time.  On information and belief, Hobb alleges that each DOE is in some manner

9    responsible for the wrongs alleged herein, and that each such Defendant advised,

10   encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts

11   alleged herein.  When the true names and capacities of said Defendants become

12   known, Hobb will seek relief to amend this complaint to show their true identities

13   in place of their fictitious names as DOES 1 through 10.

14       11.    Defendants, and each of them, were the agent, employees and servants

15   of every other Defendant.  Defendants acted in the course and scope of said

16   agency, service and employment at all relevant times.

17                              **IV.**

18              **FACTS COMMON TO ALL COUNTS**

19       12.    Plaintiff is a police officer who blew the whistle on rampant internal

20   corruption occurring within the City of Banning and the Banning Police

21   Department.  Hobb exposed cronyism, the Department's cover-up of a Civil Rights

22   Violation, several quid pro quo arrangements.  The Department terminated his

23   employment in an effort to hinder Hobb from bringing these and multiple other

24   wrongdoings to light, and as he was on verge of exposing an egregious cover up by

25   the Chief regarding a civil rights violation committed on a citizen.

26       13.    Hobb was a Board Member for the Banning Police Officers

27   Association ("Association" or "POA").  As part of his duties in the role as POA

28   Board Member, Hobb represented other officers' interests, claims and grievances,

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  as well as the Association's as a whole, during disciplinary or grievance

2  proceedings, or during many written and verbal conversations with Defendants and

3  the City's representatives.

4    14.   As a Board Member, Hobb has consistently engaged in numerous

5  protected activities, which include but are not limited to: speaking out at meetings

6  about matters of public concern as well as matters bearing on the efficiency and

7  sustainability of the City, the workforce, the Department; filing, assisting with and

8  propounding legally protected actions, including but not limited to grievances,

9  unfair labor charges, and the like.  At all times, Hobb's position on the Association

10  Board rendered his activities on their behalf protected under state and federal law,

11  including but not limited to the California and United States Constitution.

12    15.   Prior to Diaz being promoted to Chief, on or about December 18,

13  2014 Hobb sent an e-mail to City Council Members informing the council that the

14  POA had not endorsed appointing Diaz as the next chief.  The email expressed the

15  POA's desire to be included in recruiting the next chief and the desire that the new

16  chief meet the perquisites for the position of chief.  Diaz later on or about May 23,

17  2015 informed Hobb that Diaz knew Hobb did not support the promotion.  Then

18  threatened that Hobb and another officer that they should, "do whatever it took to

19  protect themselves and their family."

20    16.   On or about September 11, 2013, Hobb was approached by David

21  Ellis, the planning commissioner for the City of Banning.  Ellis demanded that the

22  fire trucks that were being used to fly American flags in honor of the fallen

23  firefighters that perished on September 11, 2001 be cited as Don Peterson had

24  considered them to be in violation of California Vehicle Section 400, which they

25  were not.  Hobb refused to violate the law by issuing fraudulent traffic citations at

26  the insistence of a council member.  As a result of this action, Peterson began his

27  unrelenting campaign of retaliation and harassment against Hobb.

28    17.   In May 2014, Hobb was demoted from sergeant to corporeal in

6

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

022

1   retaliation.  During a meeting with Diaz in May 2014, Diaz stated that the

2   demotion was politically motivated and in retaliation.  Peterson and HR Personnel

3   Rita Chaparrosa wanted Hobb to be terminated as a result of Hobb following the

4   orders of Chief Purvis and writing a police report regarding the incident on or

5   about September 11, 2013.

6        18.    Hobb blew the whistle on a quid pro quo deal between Diaz, City

7   Council, and Interim City Manager James Smith.  Diaz admitted to Hobb that he

8   promoted an unqualified officer, to the position of sergeant as a result of an

9   arrangement with Smith.  Smith promised Diaz that if the officer was promoted,

10  then The Department would receive new cars, personnel and money for the new

11  radio system.  In exchange for Fisher's promotion, Smith was told that he would

12  procure the full time City Manager position.

13       19.    Further, Hobb was impeded by both The Banning Police Department

14  and the City of Banning from exposing the unjustified promotions within the

15  department.  The Department promoted an officer to the position after the officer

16  failed to qualify to take the Chief's Oral Exam.  Diaz informed Hobb that the

17  reason for the promotion was politically motivated due to pressure being placed on

18  Diaz by The City Council Members.

19       20.    On or about August 21, 2015 Diaz admitted to Hobb that Diaz

20  purposefully passed over Hobb for a promotion.  When Hobb inquired why he was

21  not promoted, Diaz informed Hobb that Diaz disliked Hobb's "message" within

22  The Department.  Hobb's message included each of his protected actions.

23       21.    Following a series of continued harassment, retaliation and attempted

24  intimidation by Peterson, Hobb filed a complaint with HR Personnel Chapparosa

25  on or about November 9, 2014.  Diaz informed Hobb on multiple occasions that

26  Peterson wanted Hobb fired.  Peterson also attempted to engage in a quid pro quo

27  arrangement with a former City employee.  Peterson wanted the former employee

28  to write a defaming letter regarding Hobb's character in exchange for getting the

7

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  former employee an interview with another law enforcement agency.  After almost
2  a year went by without hearing about the complaint, Hobb contacted Chapparosa
3  who informed him on or about September 14, 2015 that contrary to the required
4  policy, she made the decision that The City would not open an investigation
5  against Peterson.

6      22.    Further, Hobb has blown the whistle on Diaz and his threats and
7  illegal activities on several occasions.  Most recently, Hobb became aware that an
8  officer violated the Civil Rights of a citizen.  Later, Hobb discovered that Diaz did
9  not open an internal affairs investigation but was covering the incident up.  On or
10 about September 13, 2015 Hobb sent an email to POA members requesting a
11 meeting to discuss the unethical and illegal actions committed by Diaz.  The
12 following day, Diaz placed him on administrative leave, in an effort to prohibit
13 Hobb from attending the meeting and bringing to light Diaz's actions.  Diaz
14 interfered with the Association and the exercise of its function by making illegal
15 statements that Hobb was not allowed to attend the meeting that he called.  Diaz
16 was that Hobb's intention for calling the meeting was to expose Diaz.  This was a
17 blatant attempt by Diaz to cover-up his corruption.

18     23.    Hobb has brought up and disclosed each of these law violations to the
19 Riverside County District Attorney's Office.  Hobb has voiced his concern and
20 filed documents challenging the illegal actions of Defendants, including the quid
21 pro arrangement and Diaz's sweeping under the rug the sergeant who violated the
22 Civil Rights of a citizen.  On or about November 30, 2015 The District Attorney's
23 Office notified Hobb that they will investigate the quid pro arrangement.

## V.

## CAUSE OF ACTION

### *42 U.S.C. § 1983*

*Against Defendants Diaz and Peterson*

28     24.    Plaintiff hereby incorporates each and every preceding paragraph as

8

1   though set forth in full here.

2       25.    Diaz has deliberately harassed, discriminated and retaliated against

3   Hobb by administering frivolous internal investigations, written reprimands,

4   counseling memorandums, intimidation, bullying, harassment, demotions, and

5   ultimately firing Hobb on or about March 4, 2016. Diaz admitted to Hobb that

6   Hobb would not receive a promotion in retaliation for Hobb's actions. On

7   numerous occasions, Plaintiff was informed that Peterson was attempting to fire

8   Plaintiff.  Moreover, Defendants conspired to create a basis on which to terminate

9   Plaintiff, including one basis that included Plaintiff following a directive given by

10   Diaz. Ultimately, the Defendants concocted a number of frivolous items which

11   they bundled together and used to unjustifiably terminate Plaintiff.  After the

12   frivolous investigation was completed, both Diaz and Peterson participated in the

13   decision to terminate Plaintiff's employment.

14       26.    In doing the things alleged herein, Defendants, and each of them,

15   violated the rights of Plaintiff under the First and Fourteenth Amendments to the

16   United States Constitution to free expression and to petition the government.

17   Specifically, Defendants have taken the aforementioned action against Plaintiff in

18   direct retaliation for, and in response to his various protected activities, some of

19   which have been described herein.  There are of course additional activities which

20   have not been included in this claim.  The acts and omissions of Defendants, and

21   each of them, were done by Defendants under color of state law in their capacity as

22   a municipality chartered under state law, and as policy making authorities to which

23   Defendant City delegated its governing powers in the subject matter areas in which

24   these policies were promulgated or decisions taken or customs and practices

25   followed.

26       27.    The acts and omissions described above were taken by the City's

27   official policy maker as a member charged with such responsibility.  It was or

28   should have been plainly obvious to any reasonable policy making official of the

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  City that the acts and omissions of Defendants as alleged herein, taking singly or in
2  conjunction, directly violated and continued to violate Plaintiff's clearly
3  established constitutional and statutory rights.  In doing the things alleged herein,
4  Defendants acted with malicious intent to violate Plaintiff's rights, or at least in
5  conscious, reckless, and callous disregard of his rights and to the injurious
6  consequences likely to result from a violation of said rights.  General and special
7  damages are sought according to proof.  Punitive damages are sought against the
8  individual defendant, according to proof.

9      28.    These allegations, as well as any reasonable inferences from them,
10  must be taken as true.  And, if they are taken as true, they clearly show that the
11  adverse actions taken against Hobb were taken by individuals whose actions
12  represent official policy. Here, it is without dispute that the City Manager and the
13  Police Chief possessed the requisite authority to implement the alleged adverse
14  employment actions.

15      29.    Plaintiff has no speedy nor adequate remedies to compel the relief
16  sought herein, however Plaintiff filed a Claim for Damages which has been
17  rejected by Defendants.

18      30.    It was or should have been plainly obvious to any reasonable policy
19  making official of City that the acts and omissions of Defendants as alleged herein,
20  taking singly or in conjunction, directly violated and continued to violate
21  Plaintiff's clearly established constitutional and statutory rights.  In doing the
22  things alleged herein, Defendants, and each of them, violated the rights of Plaintiff
23  under the First and Fourteenth Amendments to the United States Constitution to
24  free expression, association and assembly. Defendants acted with malicious intent
25  to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard
26  of Plaintiff's rights and to the injurious consequences likely to result from a
27  violation of said rights.  General and special damages are sought according to
28  proof.  Punitive damages are sought against the individual defendants, according to

10

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1 | proof.

2 |     31.    Plaintiff has no plain, speedy nor adequate remedy at law to prevent

3 | future violations of his civil rights, and therefore seeks extraordinary relief in the

4 | form of permanent injunctions, as hereafter described.  Damages alone are

5 | inadequate and injunctive relief is sought to command Defendants to reinstate

6 | Plaintiff with full back pay and all benefits, in order to place him in a position he

7 | would have been in, absent the unlawful conduct by Defendants.

## VI.

### Second Cause of Action

*42 U.S.C. 1983*

*Against Defendant City of Banning*

12 |     32.    Plaintiff hereby incorporates each and every preceding paragraph as

13 | though set forth in full here.

14 |     33.    Under current City policy and practice, the Chief of Police is

15 | delegated the final policy making authority with regard to imposing discipline.

16 | The City's stated policy is that The Chief of Police has the ability to "accept or

17 | modify the classification and recommendation for disciplinary action…"

18 |     34.    No other City employee or official can implement disciplinary action

19 | against an officer or are involved in any disciplinary action in any way.  The City's

20 | stated policy is that "the ultimate responsibility" for discipline rests with the Chief

21 | of Police.  The policy is that these individuals shall be considered "the ultimate

22 | authority" on behalf of the City with respect to conducting investigations and

23 | administering discipline.  Policy and practice within the City are that these

24 | individuals maintain "the ultimate authority" with respect to the functioning of the

25 | City and the Department, as they are the highest officials employed by and

26 | overseeing the City.  The policy and practice is that the Chief of Police issues a

27 | decision, the discipline shall then become effective.  Here, Diaz issued the written

28 | decisions implementing the aforementioned adverse action, and they were made

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  effective by the City pursuant to its long-standing stated policy.  The City's policy
2  expressly provides The Chief of Police with that final authority, such that their
3  actions are attributable to the City, who created the policy.

4      35.    To that end, when exercising their authority, Diaz acted pursuant to
5  these expressly adopted official policies as well as longstanding practices or
6  customs of the City that grant and delegate them as "the ultimate authority" with
7  respect to implementing discipline against an officer.  See Ninth Circuit Manual of
8  Model Civil Jury Instructions, 9.4.  In addition, Diaz possessed final policymaking
9  authority from the City with respect to discipline and performance of officers, as
10  when carrying out these actions, acted as a final policymaker for the City.  See
11  Ninth Circuit Manual of Model Civil Jury Instructions, 9.5.  *See also Lytle v. Carl*,
12  382 F.3d 978, 983 (9th Cir.2004) ("For a person to be a final policymaker, he or
13  she must be in a position of authority such that a final decision by that person may
14  appropriately be attributed to the [City]."). Pursuant to policy and practice, their
15  actions are properly attributable to the City.

16      36.    As a direct result of the Plaintiff exercising his constitutional rights to
17  free speech and participating in labor, organizational, social and political activities
18  as a member and leader of the Association, Defendants took the adverse actions
19  against him.  Absent said protected speech, Plaintiff would not have suffered
20  adverse employment actions, and would not have been injured.

21      37.    The various acts of intimidation, reprisal, retaliation, suppression
22  and/or restraint exercised by Defendants against Plaintiff have created a chilling
23  effect on his legitimate political, social and organizational speech by creating fear,
24  hesitation, hostility and other destructive responses.

25      38.    In doing the things alleged herein, Defendants, and each of them,
26  violated the rights of Plaintiff under the First and Fourteenth Amendments to the
27  United States Constitution to free expression, association and assembly.
28  Specifically, Defendants have taken the aforementioned action against Plaintiff in

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    direct retaliation for, and in response to the various protected activities of Plaintiff.

2        39.    Based upon information and belief, the acts and omissions of

3    Defendants, and each of them, were done by Defendants under color of state law

4    and as final policy making authorities to which Defendant City delegated its

5    governing powers in the subject matter areas in which these policies were

6    promulgated or decisions taken or customs and practices followed.  The acts and

7    omissions described above were taken by the City's official policy makers as

8    members charged with such responsibility.

9        40.    It was or should have been plainly obvious to any reasonable policy

10   making official of City that the acts and omissions of Defendants as alleged herein,

11   taking singly or in conjunction, directly violated and continued to violate

12   Plaintiff's clearly established constitutional and statutory rights.  In doing the

13   things alleged herein, Defendants acted with malicious intent to violate Plaintiff's

14   rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights

15   and to the injurious consequences likely to result from a violation of said rights.

16   General and special damages are sought according to proof.  Punitive damages are

17   sought against the individual defendants, according to proof.

18       41.    Plaintiff has no plain, speedy nor adequate remedy at law to prevent

19   future violations of his civil rights, and therefore seeks extraordinary relief in the

20   form of permanent injunctions, as hereafter described.  Damages alone are

21   inadequate and injunctive relief is sought to command Defendants to reinstate

22   Plaintiff with full back pay and all benefits, in order to place him in a position he

23   would have been in, absent the unlawful conduct by Defendants.

24   ///

25   ///

26   ///

27   ///

28   ///

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# VI.

## PRAYER

WHEREFORE, Plaintiff prays:

1.  For general, special, compensatory (including lost wages and benefits), statutory, exemplary and punitive damages according to proof;

2.  For injunctive relief as described above;

3.  For costs of suit;

4.  For attorneys fees as permitted by law; and

5.  For any and all other appropriate relief the Court deems necessary.

Dated:  August 8, 2016

Respectfully Submitted,

ADAMS FERRONE & FERRONE, APC

_____/s/_____

Samantha M. Swanson
Attorneys for Plaintiff,
STEVE HOBB

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial under F.R. Civ. P., Rule 38 and C.D. Cal. Rule 3.4.10.1.

Dated:  August 8, 2016

Respectfully Submitted,

ADAMS FERRONE & FERRONE, APC

_____/s/_____

Samantha M. Swanson
Attorneys for Plaintiff,
STEVE HOBB

14

030

# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION


STEVE HOBB,                    )
                               )
          Plaintiff,           )Case No.
                               )5:16-cv-01352 AB (JCx)
vs.                            )Volume I
                               )
CITY OF BANNING, a public      )
and/or municipal               )
corporation; BANNING POLICE    )
DEPARTMENT, a public agency    )
and/or municipal               )
corporation; ALEX DIAZ,        )
individually; and DOES 1       )
THROUGH 10,                    )
                               )
          Defendants.          )
_____)


DEPOSITION OF STEVEN HOBB

JANUARY 6, 2017


REPORTED BY:  IMHOF AND ASSOCIATES, INC.
              COURT REPORTERS AND VIDEOGRAPHERS
VICTORIA IMHOF WERTZ, RPR
CSR NO. 7999  20650 Adam Cir.  9431 Haven Ave.
              Yorba Linda, CA  Suite 100
                      92886  Rancho Cucamonga, CA
                                         91730
Job No. 170106V

Page 207

1        REPORTER CERTIFICATION OF CERTIFIED COPY

2

3

4

5              I, VICTORIA IMHOF WERTZ, RPR, CSR

6    No. 7999, a Certified Shorthand Reporter in

7    the State of California, certify that the

8    foregoing pages 1 through 206 constitute a

9    true and correct copy of the original

10   deposition of STEVEN HOBB, taken on

11   January 6th, 2017.

12              I declare under penalty of perjury

13   under the laws of the State of California

14   that the foregoing is true and correct.

15              Dated this 17th day of January,

16   2017.

17

18

19

20

21

22   _____

23   VICTORIA IMHOF WERTZ, RPR, CSR No. 7999

24

25

1   should write you up.  He is my sergeant.  He is a

2   sergeant.  He has the authority and ability that if

3   I do something wrong, he counsels me or he writes

4   me up.  That's his authority.  And that's why

5   Chief Diaz promoted him.  But he did not do that.

6          When that incident happened, I told

7   Chief Diaz what happened that night, and Chief Diaz

8   responded back to me that everything was fine.  He

9   told me not to worry.

10   Q    So your testimony is you did not know that

11   Sergeant Fisher had filed a complaint or that there

12   was -- strike that.

13          As of September 13, 2015, you did not know

14   that there was an Internal Affairs -- there were

15   two pending Internal Affairs investigations against

16   you at that time?

17   A    If this is the date, September 13th -- if

18   this is the date I sent my first e-mail to the POA,

19   I did not know that.

20   Q    You knew of at least one, though?

21   A    Yes.

22   Q    And the e-mail that you sent to the POA,

23   that contained some information about

24   Sergeant Avila, correct?

25   A    Yes.

033

1      Q    And to your knowledge, did that lead to a

2   complaint against you by Sergeant Avila?

3      A    Yes.

4      Q    Do you know when Sergeant Avila made that

5   complaint against you?

6      A    I do not know.

7      Q    Do you know -- do you have a recollection

8   of the nature of the Complaint that Sergeant Avila

9   filed against you?

10     A    He alleged that I created a hostile work

11   environment.

12     Q    Is it your understanding that he also

13   alleged that you disclosed confidential personnel

14   information to members of -- that you were not

15   authorized to disclose?

16     A    He alleged that I released that, yes.

17     Q    And are you aware that peace officer

18   personnel information is confidential under the

19   Penal Code?

20     A    I had this discussion with an attorney.

21   And --

22     Q    I don't want to hear about what your

23   attorney told you.

24     A    It was not my attorney.

25     Q    Okay.

Page 138

1      so he could review what the document is.

2             MR. SHELDON:  Sure, sure.

3             Do you want to take a -- go off the

4      record?  Or do you need -- do you want to do it on

5      the record?

6             MS. SWANSON:  Could we go off the record

7      just for the video.  We can all stay in the same

8      room, though.

9             MR. SHELDON:  Okay.  We will take a quick

10     break so he can read the document.

11            THE VIDEOGRAPHER:  We are going off the

12     record.  The time is 2:43 p.m.

13                  (Recess taken.)

14            THE VIDEOGRAPHER:  We are back on the

15     record.  The time is 2:45 p.m.

16     BY MR. SHELDON:

17        Q    Okay.

18             Mr. Hobb, you had a chance to review

19     Exhibit 3 during the break, correct?

20        A    Yes, I did.

21        Q    Okay.

22             Do you recognize the document?

23        A    Yes, I do.

24        Q    Okay.

25             This is a May -- the date of it is

**035**

1   March 23, 2011, correct?

2        A    Yes.

3        Q    And that -- there's a heading at the top

4   reference, "Stipulated imposition of disciplinary

5   actions - demotion."

6             Do you see that?

7        A    Yes.

8        Q    It looks like the author was Leonard

9   Purvis, chief of police?

10       A    Yes.

11       Q    Okay.

12            This -- what was your understanding of the

13   purpose of this document?

14       A    It was imposition of disciplinary

15   action.

16       Q    Okay.

17            You were being demoted from sergeant to

18   corporal as a result of this action, correct?

19       A    Yes.

20       Q    And that was by Chief Purvis, correct?

21       A    Yes.

22       Q    And under the heading of "Factual Basis

23   For Proposed Disciplinary Action," it looks like it

24   discusses a couple of different incidents where

25   there's discourteous conduct alleged against you,

1    correct?

2         A    Yes.

3         Q    And is that what you referred to earlier

4    when you said there were IA's -- I think one -- you

5    called someone "retarded"?

6         A    No.

7         Q    No?  Okay.

8              You accepted the demotion by Chief Purvis,

9    correct?

10        A    After we stipulated on some things, yes.

11        Q    Okay.

12             And when you say you stipulated to it, you

13   understood that by signing this document, you were

14   waiving your right to administratively appeal your

15   discipline, correct?

16        A    Yes.

17        Q    Okay.

18             And do you have an understanding of that

19   discipline imposed by a police officer or by

20   yourself at the City of Banning, you would have a

21   right to administratively appeal it?

22        A    Yes.

23        Q    And then that includes your termination,

24   correct?

25        A    My current termination?

Page 141

1        Q    Yes.

2        A    Yes.

3        Q    Do you recall the events that are

4    described in Exhibit 3 that led to the demotion?

5        A    Yes.

6        Q    Okay.

7             And I assume that by the fact that you

8    stipulated to the demotion, you didn't dispute

9    those facts?

10             MS. SWANSON:   I'm going to object and say

11    it assumes facts not in evidence.

12             THE WITNESS:   Repeat the question.

13    BY MR. SHELDON:

14        Q    I assume from the fact that you stipulated

15    to the discipline that you did not dispute those

16    facts that are set forth in Exhibit 3?

17        A    No.

18        Q    Is this demotion one of the -- I think you

19    called it in your complaint a "frivolous

20    disciplinary action."

21             Is this one of those that is referred to

22    in your First Amended Complaint?

23        A    No.

24        Q    So this one is legitimate?

25        A    No, I don't believe so.

Page 142

1          Q    But you stipulated to it nonetheless?

2          A    Yes.

3          Q    Okay.

4               The next document I'm going to show you,

5     which we will mark as Exhibit 4 -- is a one-page

6     document dated May 9, 2014?

7               MS. SWANSON:  And if you could -- you --

8               MR. SHELDON:  Sure.

9                    (Defendant's Exhibit 4 was marked

10                   for identification, a copy of which is

11                   attached hereto.)

12    BY MR. SHELDON:

13         Q    Just to identify it for the record.  It's

14    a City of Banning letterhead memorandum to you from

15    acting Chief Alex Diaz.  And the subject is,

16    "Probationary evaluation:  Failure of probation."

17              First of all, have you seen this document

18    before?

19         A    Yes, I have.

20         Q    Okay.

21              Is that your signature at the bottom of

22    the document?

23         A    Yes, it is.

24         Q    Going back to the prior exhibit, Exhibit

25    3, is that your signature?

Page 158

1    to that question as vague and ambiguous, and

2    potentially argumentative.

3           MR. SHELDON:  I'm going to show you the

4    next Exhibit which we will mark as -- I think

5    Exhibit 5.

6                (Defendant's Exhibit 5 was marked

7                for identification, a copy of which is

8                attached hereto.)

9    BY MR. SHELDON:

10     Q    And Mr. Hobb, let me know if you need time

11   to read this.  It's a multi-page document.

12          But for the record, it is a document on

13   Banning Police Department memo letterhead, dated

14   September 9, 2014.  It appears to be to you from

15   Interim Chief Diaz.  And the reference -- it says,

16   "Reference:  Stipulated imposition of disciplinary

17   action - reduction in pay and counseling."

18     A    I recognize the document.

19     Q    Okay.

20          And is that your signature on the

21   last -- I'm sorry -- the second to the last page

22   with a date of September 10, 2014?

23     A    Yes, it is.

24     Q    So approximately four months after you

25   failed the probation or he notified you that he was

**040**

Page 189

1      A    I felt it was a pretty personal letter.   I

2    let him know my feelings.   It's not something I

3    wanted to share with a lieutenant.

4      Q    Okay.

5           Let me get the next exhibit.

6      A    If I'm not mistaken, that was after

7    Chief Diaz told me and Officer Smith, one, that we

8    were the only ones with balls big enough to come to

9    him and tell him problems, but he also told us that

10   we needed to continue coming to him.

11     Q    Okay.

12          So you felt he had an open door policy

13   with you?

14     A    That -- yes.

15     Q    The next exhibit we will mark as Exhibit 9

16   is a one-page document from the office of chief of

17   police for the City of Banning.   It's dated

18   December -- sorry -- September 15, 2015.   And it's

19   addressed to Corporal Steve Hobb.   And this appears

20   to me to be a notice advising you that you were

21   placed on paid administrative leave effective

22   immediately.

23          And there's a signature, at the bottom of

24   which I believe to be your signature.

25          Is that the case?

Page 190

1        A    Yes, it is.

2                  (Defendant's Exhibit 9 was marked

3             for identification, a copy of which is

4             attached hereto.)

5    BY MR. SHELDON:

6        Q    Okay.

7             So this was the date that you were placed

8    on paid administrative leave, correct?

9        A    Yes.

10       Q    You had been placed on -- strike that.

11            Have you been placed on paid

12   administrative leave in connection with earlier

13   Internal Affairs investigations?

14       A    Yes.

15       Q    Was that always the case for every

16   Internal Affairs investigation that you had been

17   the subject of?

18       A    No.

19       Q    Okay.

20            Sometimes yes, sometimes no, correct?

21       A    Yes.

22       Q    Okay.

23            Is it fair to say that it depends on the

24   severity of the allegation for which you were being

25   investigated?

1        A    I don't know.

2        Q    Okay.

3             This particular Notice of Administrative

4    Leave was as a result of the Avila complaint

5    against you, correct?

6        A    Yes.

7        Q    Because you had -- in your termination

8    notice -- you have had that document before,

9    correct?

10       A    Yes.

11       Q    And you were basically terminated for

12   three different Internal Affairs investigations,

13   correct?

14       A    Yes.

15       Q    And one is the complaint from the SART

16   nurses, one was the Fisher incident that you talked

17   about, and then one was the Avila incident that we

18   have talked about?

19       A    Yes.

20       Q    And you were not placed on paid

21   administrative leave for the Fisher incident or the

22   SART nurse incident, correct?

23       A    I was not put on administrative leave for

24   the SART nurse, when I was notified of the Fisher

25   complaint.  I was already on administrative

Page 207

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

STEVE HOBB,                      )
                                 )
          Plaintiff,             )Case No.
                                 )5:16-cv-01352 AB (JCx)
vs.                              )Volume II
                                 )
CITY OF BANNING, a public        )
agency and/or municipal          )
corporation; BANNING POLICE      )
DEPARTMENT, a public agency      )
and/or municipal                 )
corporation; ALEX DIAZ,          )
individually and as police       )
chief; DON PETERSON,             )
individually; and DOES 1         )
THROUGH 10,                      )
                                 )
          Defendants.            )
_____)

DEPOSITION OF STEVEN HOBB

FEBRUARY 3, 2017

REPORTED BY:  IMHOF AND ASSOCIATES, INC.
              COURT REPORTERS AND VIDEOGRAPHERS
VICTORIA IMHOF WERTZ, RPR
CSR NO. 7999  20650 Adam Cir.  9431 Haven Ave.
              Yorba Linda, CA  Suite 100
                      92886  Rancho Cucamonga, CA
                                             91730

Job No. 170203V

**044**

```
 1          REPORTER CERTIFICATION OF CERTIFIED COPY

 2

 3

 4

 5               I, VICTORIA IMHOF WERTZ, RPR, CSR

 6     No. 7999, a Certified Shorthand Reporter in

 7     the State of California, certify that the

 8     foregoing pages 207 through 299 constitute a

 9     true and correct copy of the original

10     deposition of STEVEN HOBB, Volume II, taken on

11     February 3rd, 2017.

12               I declare under penalty of perjury

13     under the laws of the State of California

14     that the foregoing is true and correct.

15               Dated this 20th day of February,

16     2017.

17

18

19

20

21

22     _____

23     VICTORIA IMHOF WERTZ, RPR, CSR No. 7999

24

25
```

Page 214

| | | |
|---|---|---|
| 10:01:13 | 1 | other than your attorneys? |
| 10:01:16 | 2 | A   I just reviewed my transcripts. |
| 10:01:19 | 3 | Q   Okay. |
| 10:01:19 | 4 | The transcript from the Volume I? |
| 10:01:22 | 5 | A   Yes. |
| 10:01:22 | 6 | Q   Okay. |
| 10:01:22 | 7 | Anything else? |
| 10:01:31 | 8 | A   No. |
| 10:01:31 | 9 | Q   Okay. |
| 10:01:31 | 10 | I'm going to show you what we will mark as |
| 10:01:34 | 11 | Exhibit 11.  It is a document dated February 4, |
| 10:02:00 | 12 | 2016.  It's on the Banning Police Department |
| 10:02:05 | 13 | memorandum letterhead from Chief Alex Diaz to |
| 10:02:09 | 14 | yourself.  And the reference -- the subject line |
| 10:02:12 | 15 | is, "Notice of Proposed Disciplinary Action, |
| 10:02:19 | 16 | Termination." |
| 10:02:22 | 17 | And on the last page of this exhibit are |
| 10:02:31 | 18 | some signatures.  I want to say it's a one, two, |
| 10:02:47 | 19 | three -- |
| 10:02:50 | 20 | A   Third page. |
| 10:02:51 | 21 | Q   -- six, seven, eight, nine -- a 13-page |
| 10:03:03 | 22 | document, correct? |
| 10:03:23 | 23 | A   Yes. |
| 10:03:23 | 24 | (Defendant's Exhibit 11 was marked |
| 10:03:23 | 25 | for identification, a copy of which is |

Page 215

| | | |
|---|---|---|
| 10:03:23 | 1 | attached hereto.) |
| 10:03:23 | 2 | BY MR. SHELDON: |
| 10:03:23 | 3 | Q   Okay. |
| 10:03:23 | 4 | Have you seen this document before? |
| 10:03:25 | 5 | A   Yes, I have. |
| 10:03:26 | 6 | Q   Okay. |
| 10:03:26 | 7 | What do you recognize it to be? |
| 10:03:28 | 8 | A   It's a notice -- my termination notice. |
| 10:03:33 | 9 | Q   Okay. |
| 10:03:33 | 10 | But was it -- do you understand |
| 10:03:34 | 11 | the -- with public employment of peace officers, |
| 10:03:38 | 12 | there is something called a Notice of Intent to |
| 10:03:41 | 13 | Terminate and then a Notice of Termination?  Two |
| 10:03:44 | 14 | separate documents that are issued in that process? |
| 10:03:47 | 15 | A   No. |
| 10:03:47 | 16 | Q   Or do you know one way or the other? |
| 10:03:49 | 17 | A   I do not. |
| 10:03:52 | 18 | Q   Okay. |
| 10:03:56 | 19 | This -- if you turn to the third to the |
| 10:03:57 | 20 | last page, there are some signatures there.  And it |
| 10:04:04 | 21 | looks like your signature is the first there that |
| 10:04:06 | 22 | you dated this document February 5, 2016. |
| 10:04:11 | 23 | Do you see that? |
| 10:04:11 | 24 | A   Yes, I do. |
| 10:04:12 | 25 | Q   Is that your signature? |

Page 220

| | | |
|---|---|---|
| 10:09:33 | 1 | accessed some audio files without authorization to |
| 10:09:37 | 2 | do so. |
| 10:09:39 | 3 | Does that refresh your recollection? |
| 10:09:40 | 4 | A   That's what it alleges, yes. |
| 10:09:42 | 5 | Q   Okay. |
| 10:09:43 | 6 | And you disagree with that, I assume? |
| 10:09:46 | 7 | A   Yes. |
| 10:09:47 | 8 | Q   That was the basis of the chief's |
| 10:09:49 | 9 | decision? |
| 10:09:50 | 10 | A   Yes, it was. |
| 10:10:19 | 11 | Q   If you look at page 9 of the document, |
| 10:10:24 | 12 | there's a heading "IV.   Personnel File |
| 10:10:29 | 13 | Consideration." |
| 10:10:38 | 14 | And it says, "In determining this proposed |
| 10:10:41 | 15 | disciplinary action, I have reviewed your entire |
| 10:10:45 | 16 | personnel file and work history.   In doing so, I |
| 10:10:45 | 17 | have specifically taken into consideration your |
| 10:10:47 | 18 | past relevant discipline, including the following: |
| 10:10:52 | 19 | Number 1. Stipulated Imposition of Disciplinary |
| 10:10:56 | 20 | Action - Demotion dated March 23, 2011.   And Number |
| 10:10:59 | 21 | 2. Stipulated Imposition of Disciplinary Action - |
| 10:11:04 | 22 | Reduction in Pay & Counseling, dated September 9, |
| 10:11:07 | 23 | 2014." |
| 10:11:09 | 24 | This also says, "I have also considered |
| 10:11:12 | 25 | the attached letter you wrote to me, dated July 17, |

048

Page 221

| | | |
|---|---|---|
| 10:11:17 | 1 | 2015, in which you express your unhappiness with |
| 10:11:21 | 2 | your job, your anger issues, growing apathy to |
| 10:11:25 | 3 | police work and our subsequent conversations |
| 10:11:28 | 4 | regarding your work issues." |
| 10:11:33 | 5 | You were aware at this time that you were |
| 10:11:36 | 6 | served with this document that the chief was not |
| 10:11:38 | 7 | just factoring in the three IA's that we just |
| 10:11:42 | 8 | referenced, but also your entire work history, |
| 10:11:45 | 9 | correct? |
| 10:11:45 | 10 | A    Yes. |
| 10:11:46 | 11 | Q    And you do acknowledge, I think, from the |
| 10:11:48 | 12 | last deposition that you had been disciplined prior |
| 10:11:51 | 13 | to service of the Notice of Proposed Termination? |
| 10:11:56 | 14 | A    Yes. |
| 10:11:58 | 15 | Q    And that includes a demotion and also a |
| 10:12:01 | 16 | reduction in pay, right? |
| 10:12:05 | 17 | A    Two demotions.  The reduction in pay was a |
| 10:12:09 | 18 | demotion. |
| 10:12:10 | 19 | Q    Okay. |
| 10:12:11 | 20 | There was also a -- you also had not |
| 10:12:15 | 21 | passed as a sergeant promotional -- as a |
| 10:12:23 | 22 | probationary sergeant, correct? |
| 10:12:23 | 23 | A    Based on the complaints. |
| 10:12:25 | 24 | Q    Right. |
| 10:12:27 | 25 | So that's in addition to the demotion |

Page 222

| | | |
|---|---|---|
| 10:12:29 | 1 | dated May 23, 2011 and the reduction in pay and |
| 10:12:34 | 2 | counseling from September 9, 2014, correct? |
| 10:12:37 | 3 | A   Yes. |
| 10:12:54 | 4 | Q   Now, if you look at page 11 of this |
| 10:12:57 | 5 | document, the one that has your signature on it, |
| 10:13:00 | 6 | there's a heading there, "VII," that says, |
| 10:13:04 | 7 | "Pre-disciplinary Response Rights." |
| 10:13:09 | 8 | And you can read that to yourself if you |
| 10:13:11 | 9 | need to, but did you understand that you were given |
| 10:13:13 | 10 | the opportunity to have a meeting with the chief or |
| 10:13:16 | 11 | submit something in writing to him to change his |
| 10:13:21 | 12 | mind about terminating you before he actually |
| 10:13:25 | 13 | terminated your employment? |
| 10:13:29 | 14 | A   I didn't read that. |
| 10:13:30 | 15 | Q   Okay. |
| 10:13:32 | 16 | Did you -- what did you do with this |
| 10:13:34 | 17 | document once you received it? |
| 10:13:36 | 18 | A   I sent it to my attorney. |
| 10:13:38 | 19 | Q   Okay. |
| 10:13:40 | 20 | And that was Mr. Baumann at that time? |
| 10:13:46 | 21 | A   Mr. Baumann, and Mr. McGill, too, I |
| 10:13:49 | 22 | believe. |
| 10:13:49 | 23 | Q   Someone from Ms. Swanson's office? |
| 10:13:53 | 24 | A   Yes. |
| 10:13:59 | 25 | Q   Okay. |

Page 229

| | | |
|---|---|---|
| 10:21:53 | 1 | but it was something like, "Do you want a ticket, |
| 10:21:55 | 2 | then?" |
| 10:21:57 | 3 | And the citizen says, "No, I don't want a |
| 10:21:59 | 4 | ticket.  If you are going to -- I won't file a |
| 10:22:02 | 5 | complaint if you are going to write a ticket."  So |
| 10:22:05 | 6 | that's a threat under color of authority. |
| 10:22:07 | 7 | Q   Do you have any knowledge as to the |
| 10:22:09 | 8 | investigation that Chief Diaz did himself? |
| 10:22:12 | 9 | A   My understanding that Sergeant Avila came |
| 10:22:15 | 10 | in there and told him what he did. |
| 10:22:22 | 11 | Q   Do you know whether Chief Diaz listened to |
| 10:22:24 | 12 | the tapes himself? |
| 10:22:25 | 13 | A   I do not know that. |
| 10:22:26 | 14 | Q   Do you have any knowledge as to what |
| 10:22:29 | 15 | Chief Diaz did prior to issuing the written |
| 10:22:35 | 16 | reprimand to Sergeant Avila? |
| 10:22:36 | 17 | A   I do not. |
| 10:22:37 | 18 | Q   Okay. |
| 10:22:39 | 19 | So for all you know, he did an |
| 10:22:42 | 20 | investigation, he just didn't assign an IA number |
| 10:22:45 | 21 | to it? |
| 10:22:49 | 22 | A   Yes. |
| 10:22:56 | 23 | Q   Do you have an understanding about the |
| 10:23:00 | 24 | confidentiality of peace officer personnel |
| 10:23:02 | 25 | information? |

Page 241

| | | |
|---|---|---|
| 10:36:50 | 1 | A   And I believe that officer that made those |
| 10:36:52 | 2 | allegations -- it was completely unfounded. |
| 10:36:59 | 3 | Q   When you say "completely unfounded," was |
| 10:37:02 | 4 | there an investigation of that, to your knowledge? |
| 10:37:04 | 5 | A   I don't know. |
| 10:37:31 | 6 | Q   All right. |
| 10:37:32 | 7 | The next document I want to show you, |
| 10:37:33 | 8 | which I think will be Exhibit 12, is a March 4, |
| 10:37:48 | 9 | 2016 document.  That's the date on it.  It's on a |
| 10:37:55 | 10 | Banning Police Department memorandum letterhead. |
| 10:37:59 | 11 | It's from Alex Diaz, Chief of Police, to |
| 10:38:03 | 12 | Steven Hobb, police corporal.  The reference on |
| 10:38:06 | 13 | this is -- or subject matter is, "Notice of |
| 10:38:10 | 14 | Imposition of Disciplinary Action, Termination." |
| 10:38:17 | 15 | This is a five- -- actually, this exhibit |
| 10:38:21 | 16 | has six pages. |
| 10:38:32 | 17 | And the last page, I'm not sure if it's |
| 10:38:34 | 18 | all part of the same document.  Maybe you will |
| 10:38:41 | 19 | know. |
| 10:38:41 | 20 | On page 4 of the document, appears to be |
| 10:38:45 | 21 | signatures, including yours. |
| 10:38:51 | 22 | A   Yes. |
| 10:38:52 | 23 | (Defendant's Exhibit 12 was marked |
| 10:38:52 | 24 | for identification, a copy of which is |
| 10:38:52 | 25 | attached hereto.) |

**052**

Page 242

| | | |
|---|---|---|
| 10:38:52 | 1 | BY MR. SHELDON: |
| 10:38:52 | 2 | Q    Okay. |
| 10:38:53 | 3 | So that is your signature, correct? |
| 10:38:55 | 4 | A    Yes, it is. |
| 10:38:56 | 5 | Q    And it looks like you dated it on March 4, |
| 10:38:59 | 6 | of 2016? |
| 10:39:01 | 7 | A    Yes. |
| 10:39:08 | 8 | Q    And if you look at the next page, it looks |
| 10:39:11 | 9 | like it was served on you by Phil Holder on that |
| 10:39:15 | 10 | date, correct? |
| 10:39:17 | 11 | A    Yes. |
| 10:39:23 | 12 | Q    I know you said you didn't understand the |
| 10:39:25 | 13 | process fully, but on page 1, the second paragraph, |
| 10:39:35 | 14 | it talks about a Skelly meeting. |
| 10:39:41 | 15 | Does that jog your memory as far as having |
| 10:39:43 | 16 | a predisciplinary Skelly meeting with the chief? |
| 10:39:46 | 17 | A    Yes. |
| 10:39:47 | 18 | Q    Okay. |
| 10:39:56 | 19 | And Ms. Swanson attended that with you on |
| 10:39:59 | 20 | February 29, 2016, according to the last paragraph |
| 10:40:02 | 21 | on page 1, correct? |
| 10:40:04 | 22 | A    Yes. |
| 10:40:05 | 23 | Q    Do you have an independent recollection of |
| 10:40:07 | 24 | that? |
| 10:40:07 | 25 | A    Yes, I do. |

Page 243

| | | |
|---|---|---|
| 10:40:08 | 1 | Q    And where did that take place? |
| 10:40:10 | 2 | A    Chief's conference room at the police |
| 10:40:13 | 3 | station. |
| 10:40:13 | 4 | Q    Who was present? |
| 10:40:16 | 5 | A    The chief, Colin Tanner, myself and |
| 10:40:21 | 6 | Ms. Swanson. |
| 10:40:23 | 7 | Q    Who is Colin Tanner? |
| 10:40:26 | 8 | A    The city attorney, I believe it was. |
| 10:40:34 | 9 | Q    Okay. |
| 10:40:34 | 10 | When you read this document, did you agree |
| 10:40:38 | 11 | with the summary of what occurred at the Skelly |
| 10:40:42 | 12 | meeting? |
| 10:40:45 | 13 | A    I would have to read it again. |
| 10:40:49 | 14 | Q    Can you take a minute and read it. |
| 10:40:51 | 15 | A    Sure. |
| 10:41:01 | 16 | Q    Why don't we go off the record for five |
| 10:41:03 | 17 | minutes to give you a couple of minutes to read |
| 10:41:05 | 18 | this. |
| 10:41:06 | 19 | THE VIDEOGRAPHER:  We are going off the |
| 10:41:07 | 20 | record.  The time is 10:41 a.m. |
| 10:44:52 | 21 | (Recess taken.) |
| 10:44:53 | 22 | THE VIDEOGRAPHER:  We are back on the |
| 10:44:53 | 23 | record.  The time is 10:44 a.m. |
| 10:44:59 | 24 | BY MR. SHELDON: |
| 10:44:59 | 25 | Q    Have you had a chance to review |

Page 244

| | | |
|---|---|---|
| 10:45:02 | 1 | Exhibit 12? |
| 10:45:03 | 2 | A    Yes, I have. |
| 10:45:04 | 3 | Q    Okay. |
| 10:45:07 | 4 | Does that accurately summarize what |
| 10:45:09 | 5 | occurred at the Skelly meeting that you attended on |
| 10:45:15 | 6 | February 29, 2016? |
| 10:45:18 | 7 | A    Yes. |
| 10:45:18 | 8 | Q    Okay. |
| 10:45:25 | 9 | By virtue of your receiving this document, |
| 10:45:27 | 10 | though, this did not sway the chief, right?  You |
| 10:45:30 | 11 | understand that? |
| 10:45:31 | 12 | A    Yes. |
| 10:45:31 | 13 | Q    And he was terminating your employment by |
| 10:45:34 | 14 | giving you this document effective March 4, 2016, |
| 10:45:39 | 15 | correct? |
| 10:45:40 | 16 | A    Yes. |
| 10:45:46 | 17 | Q    On the last page, it indicates -- it |
| 10:45:51 | 18 | spells out your appeal rights, your administrative |
| 10:45:54 | 19 | appeals rights. |
| 10:45:56 | 20 | Do you see that? |
| 10:45:56 | 21 | A    Last page? |
| 10:45:58 | 22 | Q    Sorry. |
| 10:45:58 | 23 | Last page -- one that has your signature, |
| 10:46:02 | 24 | page 4. |
| 10:46:06 | 25 | A    Yes. |

055

Page 245

| | | |
|---|---|---|
| 10:46:06 | 1 | Q   So you understood that for you to get your |
| 10:46:09 | 2 | job back, you had the right to administratively |
| 10:46:13 | 3 | appeal your termination? |
| 10:46:15 | 4 | A   Yes. |
| 10:46:16 | 5 | Q   And is it not true that you, in fact, did |
| 10:46:25 | 6 | appeal your termination? |
| 10:46:29 | 7 | A   No, I did not. |
| 10:46:30 | 8 | Q   You did not? |
| 10:46:32 | 9 | A   I don't believe so. |
| 10:46:33 | 10 | MS. SWANSON:  I will object to the |
| 10:46:34 | 11 | question as being vague. |
| 10:46:36 | 12 | MR. SHELDON:  Okay.  I will get to that in |
| 10:46:42 | 13 | a minute. |
| 10:46:43 | 14 | BY MR. SHELDON: |
| 10:46:43 | 15 | Q   Did you understand that you had the right |
| 10:46:44 | 16 | to -- in your administrative appeal -- to contest |
| 10:46:48 | 17 | the chief's decision to terminate your |
| 10:46:50 | 18 | employment -- with an arbitrator? |
| 10:46:52 | 19 | A   Yes. |
| 10:46:53 | 20 | Q   Did you understand that you could raise |
| 10:46:54 | 21 | any defense you wanted to bring in that hearing |
| 10:46:57 | 22 | with the arbitrator? |
| 10:46:59 | 23 | A   Yes. |
| 10:47:02 | 24 | Q   You could claim that it's not fair because |
| 10:47:04 | 25 | it's retaliatory, for example? |

Page 254

| | | |
|---|---|---|
| 10:58:54 | 1 | complaint against me for creating -- or asking him, |
| 10:58:58 | 2 | and age discrimination.  And that was the first IA |
| 10:59:01 | 3 | of 2015. |
| 10:59:02 | 4 | Q   And when you say you wrote him up, you |
| 10:59:05 | 5 | issued a written reprimand to him that became -- I |
| 10:59:07 | 6 | think you said a verbal counsel or written |
| 10:59:11 | 7 | counseling? |
| 10:59:12 | 8 | A   Verbal notice of counseling. |
| 10:59:14 | 9 | Q   Okay. |
| 10:59:25 | 10 | And your testimony here today is that when |
| 10:59:28 | 11 | you did a search, you could not find a report that |
| 10:59:30 | 12 | you wrote? |
| 10:59:32 | 13 | A   No.  And that complaint by the CPS worker |
| 10:59:35 | 14 | was that he did not interview the kids and he |
| 10:59:37 | 15 | didn't take photos of the injuries. |
| 10:59:41 | 16 | Q   Okay. |
| 10:59:45 | 17 | The next document I want to show |
| 10:59:47 | 18 | you -- which I think will be Exhibit 16 -- it is a |
| 11:00:15 | 19 | two-page document.  And it's an e-mail -- it looks |
| 11:00:21 | 20 | to be an e-mail from a gmail account that I believe |
| 11:00:25 | 21 | to be yours.  The date is September 14, 2015 at |
| 11:00:29 | 22 | 2:44 p.m. |
| 11:00:40 | 23 | And I first want to ask you whether this |
| 11:00:42 | 24 | is an e-mail that you had sent?  Is this your |
| 11:00:45 | 25 | e-mail? |

Page 255

| | | |
|---|---|---|
| 11:00:45 | 1 | A    Yes, it is. |
| 11:00:46 | 2 | (Defendant's Exhibit 16 was marked |
| 11:00:46 | 3 | for identification, a copy of which is |
| 11:00:46 | 4 | attached hereto.) |
| 11:00:46 | 5 | BY MR. SHELDON: |
| 11:00:46 | 6 | Q    And this was the e-mail that we referenced |
| 11:00:49 | 7 | earlier that you had sent to the entire union about |
| 11:00:54 | 8 | Sergeant Avila, correct? |
| 11:00:56 | 9 | A    Yes. |
| 11:00:56 | 10 | Q    Okay. |
| 11:01:31 | 11 | You say on this e-mail on the very last |
| 11:01:34 | 12 | sentence of the third paragraph, you say, "If |
| 11:01:36 | 13 | anyone else would have conducted themselves in this |
| 11:01:39 | 14 | manner" -- and by "this manner," you are referring |
| 11:01:42 | 15 | to what you believe Sergeant Avila did -- "they |
| 11:01:44 | 16 | would and should be put on administrative leave and |
| 11:01:48 | 17 | severely punished, if not terminated." |
| 11:01:53 | 18 | Do you believe that Sergeant Avila should |
| 11:01:54 | 19 | have been terminated for what he received the |
| 11:01:57 | 20 | written reprimand for? |
| 11:02:01 | 21 | MS. SWANSON:  I'm going to object to |
| 11:02:02 | 22 | improper opinion. |
| 11:02:07 | 23 | THE WITNESS:  In my opinion, what he did |
| 11:02:09 | 24 | was terrible.  That's why cops are getting bad |
| 11:02:14 | 25 | press right now is because cops conduct themselves |

Page 257

11:03:26    1          Q      How do you know that Officer Thieser went
11:03:29    2    to the chief?
11:03:30    3          A      He told me he went to the chief.
11:03:32    4          Q      Did he tell you what he said to the chief?
11:03:35    5          A      He told me that he told the chief that he
11:03:37    6    was uncomfortable on the scene when this occurred.
11:03:41    7    He was embarrassed.
11:03:44    8          Q      Okay.
11:03:44    9                 Anything else?
11:03:45   10          A      That's what I recall.
11:03:57   11          Q      But you believe whatever it is that
11:03:58   12    Sergeant Avila did was worse than what you had
11:04:01   13    done?
11:04:01   14          A      By far.
11:04:12   15          Q      Before you sent this e-mail, did you seek
11:04:14   16    any guidance as to whether it was proper, legal,
11:04:18   17    for you to disclose Sergeant Avila's personnel
11:04:22   18    information with the union?
11:04:24   19          A      No, I did not.
11:04:36   20          Q      And in the second paragraph, you are
11:04:38   21    referring to unfair discipline practices -- I know
11:04:41   22    you say "primarily towards me."
11:04:47   23                 From your prior testimony, I assume you
11:04:49   24    are only referring to yourself, correct?
11:04:52   25          A      Yes.

# EXHIBIT 3



## Banning Police Department
125 E. Ramsey Street, Banning, CA 92220 (951) 922-3170

### *Memorandum*

**To:**     **Steven Hobb, Staff Sergeant**      **Date:**   March 23, 2011

**From:**   **Leonard Purvis, Chief of Police**

**Reference:**   **Stipulated Imposition of Disciplinary Action - Demotion**

---

### I.   INTRODUCTION

The purpose of this Memorandum is to set forth the terms and conditions of the negotiated and stipulated disciplinary action demoting you from your position as a Police Staff Sergeant to that of Police Sergeant at Range 68-13 and hourly rate of $36.43 in your employment with the City of Banning ("City") **effective March 24, 2011.** The City is in the process of establishing the position of Corporal. You will be assigned to the position of Corporal when the City Council approves the new rank. This stipulated determination includes a waiver of any pre-disciplinary rights and any post-disciplinary appeal rights and is based upon the Banning Police Department Manual, the City of Banning Employees Handbook, and the Internal Affairs Investigation Report #10-16, all of which are provided to you herewith.

This disciplinary action is imposed pursuant to the applicable provisions of Title 2 the Code of the City of Banning, the City of Banning Personnel Rules (Resolution No. 1974-22), the Banning Police Department Policy Manual, and any and all other applicable local rules, resolutions, ordinances or codes, and is based on the grounds individually and collectively, as stated herein and hereafter.

### II.   FACTUAL BASIS FOR PROPOSED DISCIPLINARY ACTION

On or about 4:00 a.m. on December 19, 2010, Officer Michael Bennett and Officer Joe Feola were in the Banning Police Department briefing room awaiting Officer Rick Youngblood's arrival to start their briefing. While in uniform and completing your 4:00 p.m. to 4:00 a.m. shift, you entered the briefing room to secure your weapons. It is admitted that you initiated a conversation with Officer Bennett and essentially confronted him about the status of the Banning Police Association ("BPOA") Memorandum of Understanding ("MOU") and related issues. You have stated that you believed that Officer Bennett had been "lying" to you and others about the status of the BPOA MOU and you wanted to see if Officer Bennett would "lie" to you again as you believe he had done on the previous occasions.



EXHIBIT

3

Hobb

3-23-11
060

Steven Hobb, Staff Sergeant
Notice of Stipulated Disciplinary Action - Demotion
March 23, 2011
Page 2

You admittedly became very upset with Officer Bennett. You paced back and forth in front of Bennett, who was seated the entire time. You admittedly called Bennett a "fucking liar" and told him, "You have no fucking integrity." You admitted that you were "hot" and that those witnesses who had described you as "ranting and raving" were accurate in their descriptions.

You further admitted that Officer Bennett "sat there and took it for the most part." The investigation has further shown that after being harangued by you for some time, Officer Bennett responded to you by telling you, "Fuck you, just leave." You have acknowledged that Officer Bennett had asked you to leave and asked that you not disrespect him, but you admitted to continuing to harass Officer Bennett for a period of time. You also admitted that you knew Officer Bennett wanted to put a stop to your tirade against him, but you did not stop when asked to do so.

While you have acknowledged pointing your finger at Officer Bennett, you have denied clenching your fists at your side, as described by witnesses Bennett, Feola and Youngblood. However, you did admit that you could have had your hands "relaxed" at your side in a closed manner (vs. fingers extended), but you continued to deny that your hands were "clenched." You also do not admit that your forearms tightened in what could be described as an angry manner.

While Officer Bennett did not allege that you threatened physical harm to him, he did express concern that the incident could have escalated to a physical altercation had he not remained seated the entire time. In fact, Officer Feola testified that he opted to stay in the room "just in case" something were to happen. Officer Youngblood testified that your behavior prompted him to be concerned that a physical altercation might take place. There also does not appear to be any question that you left the briefing room, returned a few minutes later in civilian clothes, and once again confronted Officer Bennett much like in the first exchange with him. You have denied any recollection, however, of entering the briefing room after you changed out of your uniform.

In summary, you admitted that, "In hindsight it probably would have been better if I would have changed out [of uniform] and contacted [Officer Bennett] after work." The investigator found that there is not always a clear line with regard to on-duty discussions about MOU-related issues, particularly as it relates to "leaving rank at the door." However, in the case in point, the investigator believed that you clearly crossed over that line, not by your inquiries per se, but by your hostile and unprofessional behavior. Regardless of rank, the investigator found your behavior to be inappropriate, and given your position as a patrol/ETU sergeant/supervisor, he believed that someone in your position would have exercised better judgment and restraint.

Steven Hobb, Staff Sergeant
Notice of Stipulated Disciplinary Action - Demotion
March 23, 2011
Page 3

## III.    RULE, REGULATION, ORDER AND STATUTORY VIOLATIONS

By signing this Memorandum, you acknowledge that the decision that you be demoted is not based upon a finding that your above described conduct violates each and every one of the rules, regulations, orders and/or statutes described below. Your violation of any one of the following rules, regulations, orders and/or statutes would in and of itself support my preliminary determination that you be demoted under the circumstances presented herein.

By signing this Memorandum, you further acknowledge that the Banning Police Department Policy Manual states that it provides employees of the department with guidelines for their conduct in order that they may participate in meeting the goals of the department in serving the community.

### <u>COUNT ONE</u>

The preponderance of evidence supports a finding that on December 19, 2010, you confronted Officer Bennett in an aggressive and confrontational manner and made inappropriate comments to him in the presence of other officers. Your actions constitute a violation of the following rules, regulations, orders and polices of the City:

Violation of Policy 340 of the Banning Police Department Policy Manual, which provides in pertinent part:

#### 340.1   PURPOSE AND SCOPE

"...A violation of any portion of this policy may only serve as the basis for internal disciplinary and/or administrative action."

#### 340.2   DISCIPLINE POLICY

"The continued employment of every employee of this department shall be based on conduct that reasonably conforms to the guidelines set forth herein. Failure of any employee to meet the guidelines set forth in this policy, whether on-duty or off-duty, may be cause for disciplinary action..."

#### 340.3   CONDUCT WHICH MAY RESULT IN DISCIPLINE

"The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of this department. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient department service:. . .

. . .

Steven Hobb, Staff Sergeant
Notice of Stipulated Disciplinary Action - Demotion
March 23, 2011
Page 4

### 340.3.2      CONDUCT

. . .

(k)     Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department.

### 340.3.5      PERFORMANCE

(o)     "...disgraceful conduct adversely affecting the employee/employer relationship, whether on or off duty."

(aa)    Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming of a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members.

## IV.   PERSONNEL FILE CONSIDERATION

In rendering this disciplinary action, I have considered your entire personnel file. In doing so, I have taken into consideration past relevant discipline, including the following:

1.    Notice and Summary of Disciplinary Action dated 01-22-09 (written reprimand).

By signing this Memorandum, you acknowledge that access to your personnel file has been made available to you and continues to be available to you during regular business hours upon your request.

## V.    MATERIALS UPON WHICH THE PROPOSED ACTION IS BASED

By signing this Memorandum, you acknowledge that the materials upon which this proposed disciplinary action is based and which have been described in this Memorandum have already been provided to you.

## VI.   CONCLUSION

The Law Enforcement Code of Ethics set forth in the Banning Police Department Policy Manual states that you will behave in a manner that does not bring discredit to you or your agency. The Departmental Values portion thereof states that your professionalism will be demonstrated through your courteous and respectful treatment of others. Your recent misconduct involving poor judgment and discourteous treatment of fellow officers and subordinate employees in front of other subordinate employees flies in the face of these mandates.

Steven Hobb, Staff Sergeant
Notice of Stipulated Disciplinary Action - Demotion
March 23, 2011
Page 5

As a Staff Sergeant, you accepted responsibility to set an example to not only the public, but also to your co-workers and subordinates. You cannot command respect and lead in this organization if you cannot make prudent decisions in addressing issues with department personnel, control your anger, and recognize when your behavior has crossed bounds of normal decency. As a result of your actions, you have damaged your reputation and standing in our organization such to warrant a reduction in your position and role through a demotion from Staff Sergeant to Sergeant. The City is in the process of establishing the position of Corporal. You will be assigned to the position of Corporal when the City Council approves the new rank.

Moving forward, please be advised that it is unacceptable for you to take any adverse actions against any persons for their involvement in this incident, the Department's investigation of it or the resulting proposed discipline.

## VII.   WAIVER OF APPEAL RIGHTS & ACKNOWLEDGMENT

You normally have both the right to a pre-disciplinary response and a post discipline appeal. However, the parties hereto, after consultation with their attorneys and as part of a negotiated settlement of this matter, hereby stipulate and agree that in exchange for reduced grounds for disciplinary action that you are waiving any right to a pre-disciplinary response and a post discipline appeal and have stipulated to the discipline being imposed herein. This Memorandum sets forth the exclusive terms and conditions of that agreement and of the discipline being imposed.

By signing this Memorandum below, you acknowledge and agree to the terms and conditions of this stipulated discipline and knowingly and voluntarily consent to waiver of any pre-disciplinary response and a post discipline appeal rights afforded to you by law or any other authority or agreement. You further acknowledge that you have had advice of counsel in signing this Memorandum. This Memorandum does not alter any rights provided under section 3300 et seq. of the California Government Code except as modified by the stipulation of discipline and waiver of appeal.

_____                    3-23-11
Steven Hobb                                              Date

cc:   Rita Chapparosa, Human Resources Deputy Director
      Colin Tanner, Deputy City Attorney
      Personnel File

064

Steven Hobb, Staff Sergeant
Notice of Stipulated Disciplinary Action - Demotion
March 23, 2011
Page 6

Enclosures:

1. IA Report #10-16 dated 2-23-11;

2. CD Containing Banning Police Department Policy Manual, OCTOBER 2010 UPDATE;

3. Proof of receipt of Banning Police Department Policy Manual, OCTOBER 2010 UPDATE (09-30-10).

4. Employees Handbook;

5. Banning Administrative Policy No. AP-09;

6. Memorandum of Understanding Between the City of Banning and the City of Banning Police Officers Association July 1, 2010-June 30, 2011;

7. Notice and Summary of Disciplinary Action dated 01-22-09 (written reprimand);

7. Most recent performance evaluation dated 09-17-10 (Per AP-09) and;

8. Blank copy of "Report of Disciplinary Action Taken" form (Per AP-09).

Steven Hobb, Staff Sergeant
Notice of Stipulated Disciplinary Action - Demotion
March 23, 2011
Page 7

### DECLARATION OF SERVICE

I hereby declare under penalty of perjury, under the laws of the State of California, that this **Notice of Stipulated Disciplinary Action – Demotion** was personally served on Steven Hobb as of the day executed below (or attach Declaration of Service by Mail).

Executed this 23 day of March, 2011, at Banning, California.


MICHAEL WEST
Print Name                                    Declarant


cc:    Rita Chapparosa, Human Resources Deputy Director
       Colin Tanner, Deputy City Attorney
       Personnel File

# EXHIBIT 4

Prepared 10/08/13        Employee Status Change Proposal
         13:47:46
                         CITY OF BANNING

Dp/Dv/Act  . . . . . . . :   22 00 421     POLICE/POLICE/PUBLIC SAFE

Employee  . . . . . . . :   3370      HOBB, STEVE B
Address   . . . . . . . :   384 STEINER DR.
                            HEMET, CA  92544

------------------------------Current------Proposed-------------
   Position  - Authorized  . :   70000
   Position  - Actual  . . . :   70000
   Dp/Dv/Act - Authorized  . :   2200421
   Dp/Dv/Act - Actual  . . . :   2200421
   Grade/Step  . . . . . . . :   M78   8
   Elm/Obj . . . . . . . . . :
   Hourly rate . . . . . . . :   41.1246
   Annual rate . . . . . . . :   85,539.23
   Pay frequency . . . . . . :   BI
   Schedule hours code . . . :   PA
   Employee status . . . . . :   RE
   Hourly/Salaried . . . . . :   H
   Full time/part/temp . . . :   F
   Exempt from overtime  . . :   N
Reason for status change  . :   PROMOTION
Effective date  . . . . . . :   5/13/13

Comments  . . . . . . . . . :   REVISED FORM; PROMOTED TO SERGEANT; 1 YEAR
                                PROBATION; NEXT REVIEW DUE 11/13/13


Authorized signatures . . . :   _____
                                                        Department

                                _____
                                                   Human Resources

067

# EXHIBIT 5

# CITY OF BANNING

# MEMORANDUM



**DATE:**   05/09/14

**TO:**   Sergeant Steve Hobb

**FROM:**   Acting Chief Alex Diaz

**SUBJECT:   PROBATIONARY EVALUATION - FAILURE OF PROBATION**

You earned a promotional appointment to Sergeant effective May 13, 2013.  This promotion requires that you successfully complete a twelve month probationary period and that you meet standards of performance during that time period.  I have reviewed and considered your work performance while in your promotional probationary status.  Unfortunately, although your performance has been adequate in some Standards, I cannot overlook the fact that other Standards have not been met.  The errors in judgment and your behavior in response to them along with emotional stability and maturity issues causes me to believe that you are simply not ready to assume the role of Sergeant at this time.  In Department's best interests, I must fail your probation and return you to your Police Corporal position effective May 12, 2014.

You continue to be a valued member of this Department.  You are strongly urged, however, to consider your overall judgment, attitude, emotional stability, maturity, response to confrontational issues, and willingness to learn from negative experiences and/or mistakes.  I am available to you at any time to discuss what you need to do to prepare yourself for future promotional opportunities.  You may file a written response to this Memo within the next 30 days from receipt of this Memo.  Your response will be filed along with this memo in your permanent personnel file.

You are directed to sign and return the original of this document and maintain a copy for your records.  This Memo does not alter any rights provided under Section 3300 et seq. of the Government Code.

I acknowledge receipt of the original of this Memo.

_____          5/12/14
Sergeant Steve Hobb                                      Date

068

# EXHIBIT 6



**Banning Police Department**
125 E. Ramsey Street, Banning, CA 92220 (951) 922-3170

*Memorandum*

**To:**       **Steven Hobb, Police Corporal**          **Date:**   September 9, 2014

**From:**   **Alex Diaz, Interim Chief of Police**

**Reference:**   **Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling**

## I.   <u>INTRODUCTION</u>

The purpose of this Memorandum is to set forth the terms and conditions of the negotiated and stipulated disciplinary action resulting from sustained findings from IA# 13-04, IA#13-22 and IA#14-01 based upon the facts and legal authority set forth herein. By signing this Memorandum, you are agreeing to the terms and conditions set forth herein and waiving any right of appeal as described in more detail hereinafter. The disciplinary action being imposed by stipulation is done pursuant to my authority under the applicable provisions of Title 2 the Code of the City of Banning ("City"), the City of Banning Personnel Rules (Resolution No. 1974-22), the Memorandum of Understanding Between the City of Banning and the City of Banning Police Officers' Association ("BPOA"), and the Banning Police Department Policy Manual, and is based on the grounds individually and collectively, as stated herein and hereafter.

It is hereby stipulated by the parties hereto that you be disciplined for the reasons stated below but that the degree and form of the discipline has been negotiated as follows:

1.   A reduction in pay roughly equivalent to a sixteen (16) hours suspension over a five (4) pay period time frame. All compensation earned during this period will be reduced as indicated, including salary driven benefits and/or overtime, if applicable.

2.   The reduction in pay shall be held in abeyance and excused if you participate in an anger management course through Counseling Team International which must commence at the next available opportunity as determined solely by the City and you must provide proof of completion as a further condition of holding the reduction in pay in abeyance. Failure to satisfy this condition shall immediately result in imposition of the reduction in pay without further right of appeal.



Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 2

      This stipulated discipline is based upon the materials referenced herein and which are made available to you for review and which are incorporated herein by this reference, including but not limited to the administrative investigation reports conducted by outside investigator Doug Wuest in IA#13-04 and by Lt. Mike West for IA# 13-22 and IA#14-01, and any and all pertinent documents, statutes, ordinances, municipal codes, rules and regulations cited therein or provided therewith.

## II.    FACTUAL BASIS FOR STIPULATED DISCIPLINARY ACTION

      The facts relative to IA# 13-04 are that on or about September 11, 2013 you responded to a call for service from David Ellis to the San Gorgonio Avenue overpass of the I-10 freeway regarding a number of allegedly illegally parked fire trucks. Mr. Ellis would later file a written complaint on or about October 11, 2013 and another on January 8, 2014 alleging that when you arrived at the overpass you became aggressive, used inappropriate language and failed to properly perform your duties when he did not take any enforcement action against the owners of the allegedly illegally parked fire vehicles. Mr. Ellis further alleged that you made false statements during the incident and later filed a false police report.

      The outside investigator, Doug Wuest of RCS Investigations, determined that most of Mr. Ellis' complaints/allegations were unfounded. However, he sustained an allegation of discourteous and disrespectful conduct towards Mr. Ellis. Mr. Ellis contended that you made the comment to him regarding the fire museum that it was a politically involved issue and stated, "I don't give a shit". Mr. Ellis believed your comment to be rude. He also said that you talked about arresting him. In your administrative interview, you acknowledged that you said to Mr. Ellis something to the effect that you did not want to be involved in that "shit". You also admitted telling Mr. Ellis that you used discretion when you did not "kick his ass" when he allegedly touched your arm. You further acknowledged in your interview that your actions were not proper and that you were wrong to behave the way you did.

      The facts relative to IA# 13-22 are that the residence located at 5516 Ellen Way was posted for non-occupancy, due to health and safety reasons. The posting was completed by Code Enforcement Officer Art Chacon on July 09, 2013 and documented by the photographs taken by Chacon on the same date. On or about July, 16, 2013, you responded to 5516 Ellen Way and made contact with the property manager who was changing the locks. The property manager told you that if anyone was found on the property, that they should be arrested for trespassing. You responded a second time later that day at the response to neighbors who had called reporting two females entering the location.

      In your administrative interview, you stated that you walked up to the front of the house and knocked on the door and announced your presence. You asked the occupants, who you could hear inside, to come open the door. You could hear females speaking inside, but no one came to the door. You knocked a second time and announced that you was a police officer and told them if they didn't come to the door, they would be arrested. You could hear one of the females tell the other to hide. After the third attempt at knocking, you went around to a side

Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 3

window, which was unsecure. You looked through the blinds and saw the two females, who you would later identify as Irma Jorquera and Melissa Lopez.

You stated that you told Ms. Jorquera to go open the front door, but she refused and said she was on the phone with her attorney. You entered the window and grabbed Ms. Jorquera and attempted to place handcuffs on her. Ms. Jorquera attempted to pull away, so you wrestled her to the ground and handcuffed her. While being taken into custody, Ms. Jorquera yelled at Ms. Lopez to run. After securing Ms. Jorquera, you followed after Ms. Lopez and found her knocking on a neighbor's door. You detained her without incident. After detaining both women, you placed them in the back of your patrol vehicle and ultimately transported them to the Banning Police Station.

During the original arrest, you admitted in your administrative interview that you asked the two women why they had acted the way they did. You further admitted telling them that they were both stupid and you asked them if they were retarded. You stated that you were trying to explain to them, that if they had just cooperated, they would have gotten a ticket. In audio recordings of some the communications between you and the women, you are heard referring to Ms. Jorquera as a "dingbat."

On September 24, 2013, Banning Police Department Administration received two Citizen Complaint Forms from Irma Jorquera and Melissa Lopez. Both alleged they were falsely arrested by you and were each treated in a rude and discourteous manner. The resulting IA#13-22 found the false arrest claim to be unfounded, but sustained the rude and discourteous behavior allegations based upon admissions in your administrative interview and the audio recordings.

The facts relative to IA# 14-01 are that in responding to a call for service on or about January 17, 2014, you assisted Officer Tammany in trying to enforce a court ordered visitation. You stated that the mother was upset because she wanted the officers to assume the liability for releasing the child to her father and you said that it was not going happen that way. The rest of family came out of the house and were upset as well. You said there was a male who asked you if you had a daughter and asked if you would want her to go through something like this. He also said something to the effect that if something happened to one of the girls, her death would be on your hands. You stated in your administrative interview that you, "lost his cool," and replied something to the effect of, "Go the fuck back inside or I'm going to arrest you." You also said the mother replied,"You can't talk to him like that." You explained that the male became upset, but the family shuffled him back inside. The mother then asked for your business card.

On January 18, 2014, then Sergeant Diaz was contacted by Yadira Orozco and Victor Cortez who submitted completed Citizen Complaint forms alleging that you had been rude and discourteous during your contact with them and threatened and intimidated Victor Cortez during a child custody exchange involving Yadira Orozco and Fidel Orozco. Yadira Orozco accused you of raising your voice, rushing them, grabbing your baton and threating to arrest them. Victor Cortez accused you of yelling at them, becoming visibly upset, and saying "If you're fucking talking about my daughters, I'll fucking kick your ass!" Mr. Cortez said he had to tell you to

Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 4

relax. He said that you grabbed your baton and released the retention on the weapon and rushed towards him. Mr. Cortez said he stood his ground because he said he had nothing to be afraid of. He stated that you said again, "If you talk about my daughters, I'll whoop your ass."

The resulting IA#14-01 sustained the charge discourteous or disrespectful behavior based upon your admissions in your interview and the testimony of the witnesses.

## III.   RULE, REGULATION, ORDER AND STATUTORY VIOLATIONS

By signing this Memorandum, you acknowledge that the decision that you be disciplined is not based upon a finding that your above described conduct violates each and every one of the rules, regulations, orders and/or statutes described below.   Your violation of any one of the following rules, regulations, orders and/or statutes would in and of itself support my preliminary determination that you be disciplined under the circumstances presented herein.

### CHARGE ONE - COUNT ONE

The preponderance of evidence supports a finding that on or about September 11, 2013, you engaged in discourteous and disrespectful conduct towards a citizen that failed to meet the expectations of the Department.   Your actions constitute a violation of the following rules, regulations, orders and polices of the City:

Violation of Policy 340 of the Banning Police Department Policy Manual, which provides in pertinent part:

### 340.3   CONDUCT WHICH MAY RESULT IN DISCIPLINE

"The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of this department. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient department service:

. . .

#### 340.3.2   CONDUCT

. . .

(k)     Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department.

. .

#### 340.3.5   PERFORMANCE

072

Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 5

. . .

(aa)   Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members.

## CHARGE ONE - COUNT TWO

The preponderance of evidence supports a finding that on or about July 16, 2013, you engaged in discourteous and disrespectful conduct towards citizens that failed to meet the expectations of the Department.   Your actions constitute a violation of the following rules, regulations, orders and polices of the City:

Violation of Policy 340 of the Banning Police Department Policy Manual, which provides in pertinent part:

### 340.3   CONDUCT WHICH MAY RESULT IN DISCIPLINE

"The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of this department. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient department service:

. . .

### 340.3.2   CONDUCT

. . .

(k)   Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department.

. .

### 340.3.5   PERFORMANCE

. . .

(aa)   Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members.

## CHARGE ONE - COUNT THREE

Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 6

The preponderance of evidence supports a finding that on or about January 17, 2014, you engaged in discourteous and disrespectful conduct towards citizens that failed to meet the expectations of the Department.   Your actions constitute a violation of the following rules, regulations, orders and polices of the City:

Violation of Policy 340 of the Banning Police Department Policy Manual, which provides in pertinent part:

### 340.3   CONDUCT WHICH MAY RESULT IN DISCIPLINE

"The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of this department. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient department service:

. . .

### 340.3.2   CONDUCT

. . .

(k)     Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department.

. .

### 340.3.5   PERFORMANCE

. . .

(aa)    Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members.

## IV.   PERSONNEL FILE CONSIDERATION

In stipulating to this disciplinary action, I have considered your entire personnel file.  In doing so, I have taken into consideration that past relevant discipline, including the following:

1.     Stipulated Imposition of Disciplinary Action - Demotion dated 03-23-11.

By signing this Memorandum, you acknowledge that access to your personnel file has been made available to you and continues to be available to you during regular business hours upon your request.

Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 7

**V.    MATERIALS UPON WHICH THE PROPOSED ACTION IS BASED**

By signing this Memorandum, you acknowledge that the materials upon which this stipulated disciplinary action is based and which have been described in this Memorandum have already been provided or made available to you for review.

**VI.    CONCLUSION & WAIVER OF APPEAL RIGHTS & ACKNOWLEDGMENT**

The Law Enforcement Code of Ethics set forth in the Banning Police Department Policy Manual states that you will behave in a manner that does not bring discredit to you or your agency.  The Departmental Values portion thereof states that your professionalism will be demonstrated through your courteous and respectful treatment of others.  Your recent misconduct involving discourteous and disrespectful treatment of citizens flies in the face of these mandates.

As a representative of this Department, you accepted responsibility to set an example to not only the public, but also to your co-workers and subordinates.  You cannot command respect and hope to lead in this organization if you cannot make prudent decisions in addressing issues with citizens, control your anger, and recognize when your behavior has crossed bounds of normal decency.  As a result of your actions, you have damaged your reputation and standing in our organization.

This stipulated discipline/decision has been made in consultation with the Deputy Director of Human Resources.  As required by due process and law, you are normally afforded administrative appeal rights pursuant to the Memorandum of Understanding Between the City of Banning and the City of Banning Police Management Association.  In this instance, however, the City and you have reached a negotiated settlement of this matter whereby the parties agree to stipulate to the discipline imposed herein in exchange for the waiver of your right to appeal and/or any further review of this matter either internally or through a civil action.  It is further stipulated and agreed that by providing this stipulated progressive discipline in exchange for a waiver of appeal rights does not create any precedent for future discipline, which shall be judged on the circumstances of such future misconduct and this past history.  Moving forward, please be advised that it is unacceptable for you to take any adverse actions against any persons for their involvement in this incident, the department's investigation of it or the resulting stipulated discipline.

The signatures set forth below hereby confirm the parties agreement to the terms and conditions of the stipulated discipline and waiver of due process appeal rights as explained and set forth above.

_Steven Hobb_
Steven Hobb
Police Corporal

_9/10/14_
Date

Steven Hobb, Police Corporal
Stipulated Imposition of Disciplinary Action - Reduction in Pay & Counseling
September 9, 2014
Page 8

_____
Alex Diaz
Interim Chief of Police

09/10/14
Date

_____
Rita Chapparosa
Deputy Human Resources Director

09/10/14
Date

Enclosures:

1.     Banning Administrative Policy No. AP-09;

2.     Most recent performance evaluation dated 11/11/13 (Per AP-09); and

3.     Blank copy of "Report of Disciplinary Action Taken" form (Per AP-09).


cc:     Colin Tanner, Deputy City Attorney
         Personnel File

076

# EXHIBIT 7

# TCTI ——— THE COUNSELING TEAM INTERNATIONAL

April 27, 2015

City of Banning
ATTN: Rita Chapparosa
      Deputy Human Resources Officer

This is to verify that Steve Hobb attended 6 sessions with me between January and April of 2015. Steve was cooperative and engaged in therapy sessions at which time issues of anger management were discussed.

Sincerely,

*Andy Clack*

Andy Clack, M.A.
IMF 70187
The Counseling Team International (TCTI)

P.O. Box 10427 • San Bernardino, CA 92423 • (909) 884-0133 • Fax (909) 384-0734
Satellite Offices in the Counties of: Los Angeles • Orange • Riverside • San Bernardino • San Diego • Ventura          077
www.thecounselingteam.com